**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER PERRY, CATRINA KNIGHT, | * | |
| and TALITHA ROBINSON-RUSSELL | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CIVIL ACTION NO. |
| v. | * | |
| | * | 2:07-CV-1067-WKW-SRW |
| TWEEN BRANDS, INC., JUSTICE | * | |
| STORES, L.L.C., CARISSA GODWIN | * | |
| and AMI LANE, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY IN**
**FURTHER SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Defendants Tween Brands, Inc., Justice Stores, L.L.C., Carissa Godwin and Ami Lane (collectively referred to herein as "Defendants") move this Court, for leave to file supplemental authority in further support of Defendants' motion for partial dismissal and state as follows:

1. On January 3, 2008, Defendants' filed a Motion and Memorandum in Support of their Motion for Partial Dismissal Pursuant to Federal Rule of Civil Procedure 12(B)(6) of those portions of the Complaint that allege a "pattern and practice of systemic discrimination" as set forth in paragraphs 22 and/or 26 and 33  (Dkt. #15, 16).

2. On February 6, 2008, the Eleventh Circuit in ***Davis, et al. v. Coca-Cola Bottling Company, Consolidated***, Civ. No. 05-12988 (11th Cir. Feb. 6, 2008) dismissed Plaintiffs' "pattern-or-practice" claims because they lacked standing to pursue such claims as individual plaintiffs.  The Eleventh Circuit held that "pattern-or-practice" claims are viable only when brought as class claims and may not be brought by individual plaintiffs.

3. The Eleventh Circuit decided *Davis* after Defendants filed their motion for partial dismissal. *Davis* provides additional authority for the Court to dismiss those portions of Plaintiffs' Complaint that allege "pattern-and-practice" claims as set forth in Exhibit "A," attached hereto.

4. Defendants respectfully request leave to file the attached supplemental authority and argument in further support of Defendants' Motion for Partial Dismissal.

Respectfully submitted this _____ day of February 2008.

s/ R. Bradley Adams
**R. Bradley Adams**
Alabama Bar No. ASB 8742-E67A
Email: radams@littler.com
LITTLER MENDELSON. P.C.
63 South Royal Street, Suite 709
Mobile, AL 36602
Phone: 251-432-0413
Fax: 251-432-0427

**Grady B. Murdock, Esq.**
Illinois Bar No. 1992236
Littler Mendelson, PC
200 North LaSalle Street, Suite 2900
Chicago, IL 60601-1014
Phone: 312-795-3233
Fax: 312-372-7880
Email: gmurdock@littler.com

**Terese Connolly, Esq.**
Illinois Bar No. 6282685
Littler Mendelson, PC
200 North LaSalle Street, Suite 2900
Chicago, IL 60601-1014
Phone: 312-795-3233
Fax: 312-372-7880
Email: tconnolly@littler.com

**Latesa Bailey, Esq.**
Georgia Bar No. 107705
Littler Mendelson, PC
3348 Peachtree Road, N.E., Suite 1100
Atlanta, GA 30326-1008
Phone:  404-760-3942
Fax:  404-233-2361
Email:  lbailey@littler.com

**ATTORNEYS FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER PERRY, CATRINA KNIGHT, and TALITHA ROBINSON-RUSSELL | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CIVIL ACTION NO. |
| v. | * | |
| | * | 2:07-CV-1067-WKW-SRW |
| TWEEN BRANDS, INC., JUSTICE STORES, L.L.C., CARISSA GODWIN and AMI LANE, | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2008, I electronically filed the foregoing Motion for Leave to File Supplemental Authority in Further Support of Defendants' Partial Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys of record for Plaintiffs:  **Christopher Stephen Genereux, Esq.** (csgenereux@tmgslaw.com), **Jacqueline C. Smoke, Esq.** (jcsmoke@tmgpc.com), and **Tyrone Carlton Means, Esq.** (tcmeans@tmgpc.com), Attorneys for Plaintiff.

s/R. Bradley Adams
R. BRADLEY ADAMS
(ASB 8742-E67A)
**Attorney for Defendants**
Littler Mendelson, P.C.
63 South Royal Street, Suite 900
Mobile, Alabama 36602
Telephone:  251-432-4540
Fax:  251-432-0427
Email:  radams@littler.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER PERRY, CATRINA KNIGHT, and TALITHA ROBINSON-RUSSELL | * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO. |
| v. | * * | 2:07-CV-1067-WKW-SRW |
| TWEEN BRANDS, INC., JUSTICE STORES, L.L.C., CARISSA GODWIN and AMI LANE, | * * * * | |
| Defendants. | * | |

**EXHIBIT A**

**I.      INTRODUCTION**

On January 3, 2008, Defendants Tween Brands, Inc., Justice Stores, L.L.C., Carissa Godwin and Ami Lane (collectively referred to herein as "Defendants"), moved this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to partially dismiss portions of Count III (Defamation) of the Complaint filed by Plaintiffs Jennifer Perry, Catrina Knight and Talitha Robinson-Russell (collectively referred to herein as "Plaintiffs"). (Plaintiffs' Complaint ("Pl. Comp.") ¶¶ 41 and 42).  Defendants also moved this Court for dismissal of those portions of the Complaint that allege a "pattern and practice of systemic discrimination" (Pl. Comp. ¶¶ 22 and/or 26 and 33), on the grounds that such allegations failed to meet the pleading standard articulated by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

In light of the recent Eleventh Circuit decision, *Davis, et al. v. Coca-Cola Bottling Company, Consolidated*, Civ. No. 05-12988 (11th Cir. Feb. 6, 2008) (a copy of

which is attached hereto as Exhibit 1), notably published after Defendants' filed their initial Motion, Defendants now move the Court to consider an additional ground for dismissal of those portions of Plaintiffs' Complaint that allege a "pattern and practice of systemic discrimination."  In the alternative, Defendants move to strike all allegations of a pattern and practice of systemic discrimination based on this additional authority.  In particular, according to the *Davis* decision, absent a class action, pattern and practice cannot be pled.  *Id.*

## II.    ARGUMENT

In *Davis*, published on Monday, February 6, 2008, the Eleventh Circuit held that "pattern–or–practice" claims are viable only when brought as class claims and may not be pursued by individual plaintiffs.  *Davis,* 2008 U.S. App. LEXIS 2562 at * 22.  The Court reasoned that class status is necessary in a "pattern-or-practice" case because if not, the named plaintiffs lack standing to pursue a broad claim in which unnamed parties might have a stake.  *Id.*  Class action rules make certain that the named plaintiffs will adequately represent those unnamed parties' interest.  This decision joins the Second, Fourth, and Sixth Circuits in holding that class status is necessary to sustain "pattern-or-practice" claims.  *See Bacon v. Honda*, 37 F.3d 565, 575 (6th Cir. 2004); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998) *vacated on other grounds*, 527 U.S. 1031 (1999); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2nd Cir. 1998).

The *Davis* case is directly on point with the case at bar.  Specifically, seven current and two former employees of Defendant Coca-Cola claimed a "pattern-or-practice" of discrimination against African American workers as to "pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment, and

intimidation, and other terms and conditions of employment." *Davis,* 2008 U.S. App. LEXIS 2562 at * 9. Similarly, Plaintiffs in the case at bar, claim "a pattern and practice of systemic racial discrimination, particularly with regards to hiring, assignments, and promotion of African Americans." (Pl. Comp. ¶ 26). Also like the plaintiffs in *Davis,* who prayed for declaratory and injunctive relief, back pay, and compensatory and punitive damages and demanded a trial by jury (*Davis*, 2008 U.S. App. LEXIS at *2 fn 1), the Plaintiffs in the present case are requesting the same type of relief: reinstatement, compensatory and punitive damages, and/or nominal damage, declaratory and injunctive relief, and trial by jury. (Pl. Comp. ¶¶ 43 – 45). Yet, neither group of plaintiffs brought forth a class claim. Therefore, all claims of "pattern and practice" alleged by the Plaintiffs in the case at bar should be dismissed.

## III.    CONCLUSION

WHEREFORE Defendants respectfully request that the Court dismiss those portions of the Plaintiffs' Complaint that assert a "pattern and practice" of alleged systemic discrimination as set forth in paragraphs 22, 26, and 33 on the additional grounds asserted above. Or, in the alternative, Defendants respectfully request that the Court strike all allegations of a "pattern and practice" of alleged systemic discrimination based on this additional authority.

Respectfully submitted this 13th day of February 2008.

s/ R. Bradley Adams

**R. Bradley Adams**
Alabama Bar No. ASB 8742-E67A
Email: radams@littler.com
LITTLER MENDELSON. P.C.
63 South Royal Street, Suite 709
Mobile, AL 36602
Phone: 251-432-0413
Fax: 251-432-0427

**Grady B. Murdock, Esq.**
Illinois Bar No. 1992236
Littler Mendelson, PC
200 North LaSalle Street, Suite 2900
Chicago, IL 60601-1014
Phone: 312-795-3233
Fax: 312-372-7880
Email: gmurdock@littler.com

**Terese Connolly, Esq.**
Illinois Bar No. 6282685
Littler Mendelson, PC
200 North LaSalle Street, Suite 2900
Chicago, IL 60601-1014
Phone: 312-795-3233
Fax: 312-372-7880
Email: tconnolly@littler.com

**Latesa Bailey, Esq.**
Georgia Bar No. 107705
Littler Mendelson, PC
3348 Peachtree Road, N.E., Suite
1100
Atlanta, GA 30326-1008
Phone: 404-760-3942
Fax: 404-233-2361
Email: lbailey@littler.com

**ATTORNEYS FOR
DEFENDANTS**

1 of 1 DOCUMENT

**MELVIN DAVIS, LEANDER FOSTER, MICHAEL A. FOX, RANDOLPH HATCHER, TERRY R. JACKSON, WARREN LAW, JR., ATTRESS LOGAN, LORENZO MARTIN, WATSON, SGT., Plaintiffs-Appellants, versus COCA-COLA BOTTLING CO. CONSOLIDATED, Defendant-Appellee.**

**No. 05-12988**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**2008 U.S. App. LEXIS 2562**

**February 6, 2008, Decided**
**February 6, 2008, Filed**

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Southern District of Alabama. D. C. Docket No. 02-00629-CV-CB-M.

**DISPOSITION:** AFFIRMED, in part; VACATED, in part; and REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, current and former employees, appealed from the United States District Court for the Southern District of Alabama's grant of summary judgment to defendant employer on claims that included that the employer was maintaining a "pattern or practice" of race discrimination, relating to the method of hiring supervisors, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and 42 U.S.C.S. § 1981.

**OVERVIEW:** The employees lacked standing for declaratory and injunctive relief available for a class under Fed. R. Civ. P. 23(b)(2), 42 U.S.C.S. § 2000e-6(a). By the time the summary judgment motion was under advisement, such requests for relief had been abandoned. It was not error to dismiss the pattern or practice claim qua claim. Hiring decisions, light work assignments, and the alleged retaliation were discrete acts, not part of a hostile work environment. Thus, all but a few were time-barred. One employee's two hiring claims were not mentioned by the district court, and the record did not indicate those claims failed as a matter of law. They were remanded. But, merely alleging that "plaintiffs were denied promotions" was insufficient as to those hirings and the other employees. A failure to allege that light work was available within two employees' medical restrictions doomed those claims. The employer's reason for assigning one employee to a position, due to his medical disability, was unrebutted. And, since that retaliatory downgrading claim failed, the termination claim failed because when such work was not available, creating a job as an accommodation was not required.

**OUTCOME:** The district court's judgment was affirmed with the exception of two Title VII hiring claims regarding one employee, and those two claims were remanded.

**CORE TERMS:** hiring, summary judgment, class action, light work, time-barred, shotgun, supervisor, class members, retaliation, injunctive relief, prima facie, declaratory, race discrimination, light duty, foster, limitations period, similarly situated, opening brief, discriminatory, hostile, work environment, bulk, certification, supervisory, claims arising, manager, order granting, non-supervisory, discriminated, bargaining

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Prerequisites > Maintainability*
*Labor & Employment Law > Discrimination > Disparate Treatment > Class Actions*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Pattern or Practice*

2008 U.S. App. LEXIS 2562, *

***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > General Overview***

[HN1] Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-6(a), entitles the government to bring a pattern or practice claim on behalf of a class of similarly situated employees for declaratory and injunctive relief against an ongoing act of intentional discrimination in violation of Title VII of the Civil Rights Act of 1964. A pattern or practice claim for such relief may also be brought under Title VII as a class action, pursuant to Fed. R. Civ. P. 23(b)(2), by one or more of the similarly situated employees. In addition to praying for declaratory and injunctive relief, the complaint may also seek back pay on behalf of individual class members who have been injured by the employer's discriminatory practice. 42 U.S.C.S. § 2000e-5(g)(1). Such complaints present a hybrid Fed. R. Civ. P. 23(b)(2) class action.

***Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Pattern or Practice***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Compensatory Damages***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Injunctions***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Punitive Damages***
***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > General Overview***

[HN2] A pattern or practice discrimination claim may be brought under 42 U.S.C.S. § 1981 as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., in which case Title VII's substantive rules inform the 42 U.S.C.S. § 1981 rules of decision. The enactment of The Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified as amended at 42 U.S.C.S. § 1981) enables plaintiffs to recover compensatory and punitive damages and to demand a trial by jury. Thus, in an employment discrimination suit brought under Title VII and § 1981, a plaintiff can obtain, in addition to declaratory and injunctive relief under both statutes, back pay under Title VII and § 1981, and compensatory and punitive damages under § 1981.

***Civil Procedure > Class Actions > Prerequisites > General Overview***
***Constitutional Law > The Judiciary > Case or Controversy > Standing > Particular Parties***

***Labor & Employment Law > Discrimination > Disparate Treatment > Class Actions***
***Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Pattern or Practice***

[HN3] A court must address two issues before proceeding to adjudicate as a class action a pattern or practice employment discrimination claim. First, the court must determine whether the named plaintiff has standing to prosecute the claim on behalf of similarly-situated employees. Only someone who claims he has been, or is likely to be, harmed by the ongoing discriminatory practice has an adequate stake in the litigation to satisfy the "case or controversy" requirement of U.S. Const. art. III. If the named plaintiff lacks standing to sue, he cannot prosecute the pattern or practice claim, and unless an employee who has been, or is likely to be, harmed by the discriminatory practice is substituted as the named plaintiff, the claim fails. Second, assuming the named plaintiff has standing to sue, the court must determine whether Fed. R. Civ. P. 23(a)'s requirements of numerosity, commonality, typicality, and adequacy are satisfied, and whether, as required by Rule 23(b)(2), the defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

***Civil Procedure > Justiciability > Standing > General Overview***
***Constitutional Law > The Judiciary > Case or Controversy > Standing > Elements***

[HN4] A plaintiff must claim facts consistent with the constitutional standing requirements. The irreducible constitutional minimum of standing requires: (1) that the plaintiffs have suffered an injury in fact -- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of -- the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

***Civil Procedure > Class Actions > Prerequisites > General Overview***

[HN5] See Fed. R. Civ. P. 23(a).

***Civil Procedure > Class Actions > Prerequisites > General Overview***

2008 U.S. App. LEXIS 2562, *

*Labor & Employment Law > Discrimination > Disparate Treatment > Class Actions*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Pattern or Practice*
[HN6] If the court resolves the threshold issues in favor of proceeding with a class litigation on a pattern or practice discrimination case and, at the conclusion of the first stage on standing, finds that the employer has an ongoing practice of discrimination against the plaintiff class, declares the practice invalid and enjoins the practice, the case advances to the second stage on the requirements of Fed. R. Civ. P. 23. There, individual class members may seek redress for injuries sustained, perhaps in separate proceedings. Because a finding of a pattern or practice changes the position of the employer to that of a proved wrongdoer, each class member seeking redress may rely on that finding as circumstantial evidence that the employer made the challenged employment decision with intent to discriminate. If the court denies the plaintiffs relief in the first stage, however, because the named plaintiff failed to establish the alleged pattern or practice, the class claim is dismissed. Hence, all that remains would be the claims of the individual class members, and those claims would be litigated under the familiar McDonnell Douglas burden-shifting framework.

*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Remedies > Injunctions > General Overview*
*Constitutional Law > The Judiciary > Case or Controversy > Standing > Particular Parties*
[HN7] To have constitutional standing to seek injunctive relief, a plaintiff has to credibly allege that he faces a realistic threat from the future application of the defendant's policy.

*Civil Procedure > Justiciability > Standing > Third Party Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing > Third Party Standing*
[HN8] The general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limit on the exercise of federal jurisdiction, not a constitutional mandate.

*Civil Procedure > Justiciability > Standing > Third Party Standing*
*Civil Procedure > Class Actions > Class Members > Named Members*

*Constitutional Law > The Judiciary > Case or Controversy > Standing > Third Party Standing*
[HN9] A class representative can have standing to continuing prosecuting a class action for relief on behalf of the class members even though he has settled his claim against the defendant and his own case is therefore moot.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Governments > Courts > Rule Application & Interpretation*
[HN10] The Rules Enabling Act prohibits the use of a procedural rule to abridge, enlarge, or modify a substantial right. 28 U.S.C.S. § 2072(b).

*Civil Procedure > Class Actions > General Overview*
*Governments > Legislation > Statutes of Limitations > Tolling*
[HN11] When a complaint appears to constitute a class action, the statute of limitations is tolled as of the date the complaint is filed, and it remains tolled until the court rejects class certification or the case comes to an end.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
[HN12] Under the McDonnell Douglas framework, once a plaintiff has established a prima facie case that the challenged employment decision was motivated by an intent to discriminate, the burden of producing a non-discriminatory reason for the decision is shifted to the employer, but the burden of proving that the non-discriminatory reason was the reason for the challenged action is not. In other words, the burden of proof on the issue of whether the employer was guilty of unlawful discrimination remains with the plaintiff.

*Labor & Employment Law > Discrimination > Disparate Treatment > Statutes of Limitations*
*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Statutes of Limitations*
*Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)*
[HN13] If the act gives rise to a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., then it is subject to Title VII's 180-day limitations period. As for hostile work environment claims that span the 180-day period, those claims can be actionable, even though some of the acts establishing the claim occurred outside that limitations period. This teaching has been applied to claims under 42 U.S.C.S. § 1981 as well as Title VII.

2008 U.S. App. LEXIS 2562, *

*Civil Procedure > Appeals > Briefs*
*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN14] An argument not included in the appellant's opening brief is deemed abandoned. And presenting the argument in the appellant's reply does not somehow resurrect it.

*Civil Procedure > Appeals > Standards of Review > General Overview*
[HN15] An appellate court has the authority to affirm the district court, even if it is on a ground other than that upon which it based its decision.

*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Adverse Employment Actions > Demotions & Promotions*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Adverse Employment Actions > Discharges & Failures to Hire*
[HN16] To establish a prima facie case of intentional discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) was qualified and applied for the position at issue, (3) was rejected, and (4) the position was filled by a person outside the protected class. Where the employer uses an informal hiring system in which it does not post openings, the plaintiff makes out a prima facie case by showing that the employer had a reason to think the plaintiff was interested in the position.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN17] Fed. R. Civ. P. 8(a)(2) requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The point is to give the defendant fair notice of what the claim is and the grounds upon which it rests. To that end, a complaint's factual allegations must be enough to raise a right to relief above the speculative level.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN18] Although a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., complaint need not

allege facts sufficient to make out a classic McDonnell Douglas prima facie case, it must provide enough factual matter taken as true to suggest intentional race discrimination.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN19] Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. The main Fed. R. Civ. P. 8(a) standard is whether the allegations plausibly suggest, and are not merely consistent with, a violation of the law.

*Labor & Employment Law > Discrimination > Retaliation > Elements > General Overview*
*Labor & Employment Law > Discrimination > Retaliation > Elements > Causal Link*
[HN20] To make out a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. The challenged action must be materially adverse from the standpoint of a reasonable employee. To show the adverse action was causally related to the employee's protected expression, the plaintiff must prove that the protected activity and the adverse action are not completely unrelated. Although courts interpret the causal link requirement broadly, merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element - for temporal progression to be enough, the events must be in "very close" proximity.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN21] See Fed. R. Civ. P. 10(b).

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN22] Fed. R. Civ. P. 8(a)(2), 10(b), work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

2008 U.S. App. LEXIS 2562, *

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN23] See Fed. R. Civ. P. 8(b)(1).

*Legal Ethics > Client Relations > Effective Representation*
*Legal Ethics > Professional Conduct > General Overview*
[HN24] The Model Rules of Prof'l Conduct R. 3.2, and Ala. R. Prof. Conduct 3.2, both provide that a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. Ala. R. Prof. Conduct 3.2, cmt., underscores both rules, stating that dilatory practices bring the administration of justice into disrepute. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form*
[HN25] See Fed. R. Civ. P. 12(e).

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > Class Actions*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Pattern or Practice*
[HN26] Where a complaint alleges that the employer is engaging in a pattern or practice of race discrimination against a class of similarly situated employees and seeks declaratory and injunctive relief, the court must determine without delay whether plaintiffs are bringing a Fed. R. Civ. P. 23(b) class action or not. Fed. R. Civ. P. 23(c)(1)(A).

*Civil Procedure > Class Actions > General Overview*
[HN27] See Fed. R. Civ. P. 23(c)(1)(A).

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Costs & Attorney Fees*
[HN28] Title VII of the Civil Rights Act of 1964 authorizes the court to award a reasonable attorney's fee to the prevailing party in a Title VII case. 42 U.S.C.S. § 2000e-5(k). This authority extends to the court of appeals.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Costs & Attorney Fees*
[HN29] See 42 U.S.C.S. § 2000e-5(k).

**JUDGES:** Before TJOFLAT and PRYOR, Circuit Judges, and GEORGE *, District Judge.

      *   Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

**OPINION BY:** TJOFLAT

**OPINION**

    TJOFLAT, Circuit Judge: District Judge.

    The plaintiffs in this employment discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, are seven employees and two former employees of Coca-Cola Bottling Co. Consolidated ("CCBCC"). In their complaint, they allege that CCBCC is maintaining a "pattern or practice" of discrimination against them and all other similarly situated employees on account of their race, which is black, with respect to hiring, promotion, pay, a racially hostile workplace environment, and light work assignments. [1] After the case proceeded through several rounds of pleadings, [2] partially dispositive rulings on motions, [3] and considerable discovery, plaintiffs' claims of race discrimination under Title VII and § 1981 boiled down to claims that CCBCC: has [*2] a pattern or practice of subjectively hiring supervisors, in which qualified blacks are not meaningfully considered; [4] preferred whites in awarding light work assignments; maintained a racially hostile work environment; and twice retaliated against one of the plaintiffs for complaining about race discrimination in the workplace.

        1    Plaintiffs' complaint alleges "across-the-board" employment discrimination, *see e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-61, 102 S. Ct. 2364, 2370-72, 72 L. Ed. 2d 740 (1982), and prays for declaratory and injunctive relief, back pay, and compensatory and punitive damages and demands a trial by jury.

        2    This suit has had a convoluted history. Plaintiffs began it by filing a complaint in the district court on August 19, 2002, while the charges of discrimination they had filed with the Equal Employment Opportunity Commission ("EEOC") were still pending. Their original complaint con-

2008 U.S. App. LEXIS 2562, *

tained the essence of the Title VII claims (which were not ripe) and the § 1981 claims now before us. Plaintiffs amended their complaint shortly after bringing suit, the defendant moved to dismiss it pursuant to Fed. R. Civ. P. 12(c), and the court granted the motion in [*3] part in November 2002. Nothing in the court's order, the amended complaint, or the defendant's Rule 12(c) motion is germane in this appeal. On January 3, 2003, the EEOC issued right-to-sue letters to seven of the nine plaintiffs, and on March 23, 2003, plaintiffs filed their second amended complaint. The issues here were framed by that complaint and the defendant's answer. Unless otherwise indicated, the complaint we refer to in this opinion is the second amended complaint, which we label the complaint.

3   These motions were, in the main, CCBCC's motions for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c).

4   Throughout this litigation, the parties and the district court have referred to the hiring of supervisors as "promotions." These employment decisions are not, either factually or legally, promotions; they are hirings, as indicated in part I.A, *infra*. CCBCC hires someone - a union member or a person from outside the company - to fill a management position that is clearly non-union. We therefore consider, and refer to, plaintiffs' "promotion" claims as hiring claims brought under Title VII and § 1981.

The district court ruled on the legal sufficiency of these claims on CCBCC's motion   [*4] for summary judgment. 5 First, the court dismissed plaintiffs' pattern or practice claims on the ground that a pattern or practice claim is available only as a class action and plaintiffs had not sought class certification. Next, the court granted CCBCC summary judgment on all of plaintiffs' individual hiring and light duty claims brought under Title VII as time-barred. Finally, the court granted summary judgment on all of plaintiffs' individual § 1981 claims. All but four § 1981 claims - two light duty claims and two retaliation claims - were found time-barred. They were dismissed on the merits, for lack of proof. 6

5   The court held some of plaintiffs' claims insufficient on CCBCC's motions for judgment on the pleadings, see Fed. R. Civ. P. 12(c), filed in response to plaintiffs' complaint and amended complaint. The complaint pertinent to this appeal is plaintiffs' second amended complaint. *See supra* note 2. We do not address these Rule 12(c) rulings because the claims those rulings held in-

sufficient were re-alleged in the second amended complaint and were rejected either expressly or implicitly by the district court's order granting CCBCC's motion for summary judgment.

6   As explained   [*5] in Part V.B.2, infra, the court dismissed one of Frederick Watson's retaliation claims because it was not pled in the complaint, but held alternatively that the claim failed as a matter of law.

Plaintiffs now appeal, arguing that the district court erred in holding that a pattern or practice claim (as it relates to the manner in which CCBCC hires supervisors) must be brought as a class action. They also argue that the court erred in dismissing their individual § 1981 claims as time-barred or for lack of proof and all of their Title VII claims as time-barred. 7 Finally, plaintiffs complain that the court overlooked several hiring claims that were not explicitly set out in their complaint but were called to the court's attention in their opposition to CCBCC's motion for summary judgment. We affirm the district court's judgment with the exception of two Title VII hiring claims, which we remand for further proceedings.

7   Plaintiffs do not appeal the district court's dismissal of their hostile work environment claims, whether brought under Title VII or § 1981, for lack of proof.

We begin by describing plaintiffs' employment - in particular, how CCBCC hired supervisors and assigned light work. [*6] We then move to the allegations of the complaint, the district court's summary judgment decision, and our analysis and disposition of the issues plaintiffs raise.

I.

A.

CCBCC is a soft drink production, bottling, and distribution corporation with operations throughout the southeast United States. Plaintiffs Melvin Davis, Leander Foster, Michael Fox, Randolph Hatcher, Terry Jackson, Warren Law, and Attress Logan are current employees at CCBCC's Mobile, Alabama facility; Frederick Watson and Lorenzo Martin are former employees. 8 The employees at the Mobile facility are assigned to divisions: production, sales, and truck maintenance. The sales division is subdivided by types of customers and routes: bulk, conventional, cold drink, and full-service. Most of the plaintiffs work in the sales division, delivering drinks to these customers.

2008 U.S. App. LEXIS 2562, *

8   To simplify discussion, we treat all plaintiffs as current employees unless otherwise indicated.

Plaintiffs are non-supervisory employees. CCBCC's non-supervisory employees are members of a bargaining unit represented by Local 991 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ("the union") and are paid by [*7] the hour. [9] A collective bargaining agreement regulates the terms and conditions of their employment, including the assignment of light work.

9   The record suggests that at least some sales positions are compensated, at least in part, by commission on sales.

Supervisors are non-union and are paid salaries. Because they are non-union, the collective bargaining agreement does not regulate the terms and conditions of their employment. Before plaintiffs filed the EEOC charges that led to this litigation, CCBCC would fill a vacant supervisory position by word of mouth. Management would encourage specific non-supervisory employees to apply for the position and occasionally would solicit applications from outside the company. When the non-supervisory employees learned of a vacancy, some would apply. After all the applications were in, a panel of three - which would normally include the Mobile facility human resources manager, or a member of his staff, and the person responsible for supervising the open position - would interview the applicants. CCBCC ceased the word-of-mouth practice, and began posting vacancies, after plaintiffs filed their EEOC complaints. Plaintiffs Jackson, Logan, Fox, and [*8] Davis were interviewed for supervisory positions prior to filing their EEOC complaints and before CCBCC changed its word-of-mouth policy.

Regarding light work, the collective bargaining agreement provides that light work within an injured employee's medical restrictions can be assigned when such is available. CCBCC's supervisors determine whether and what type of light work might be available; human resources decides whether the available work fits the restrictions of the injured employee. [10]

10   In its answer to plaintiffs' complaint, CCBCC stated, in its ninth defense, that "some" of plaintiffs' claims "may be preempted by Section 301 of the Labor-Management Relations Act, 1947, 29 U.S.C. § 141," and, in its tenth defense, that "[t]hose claims . . . that may be preempted by Section 301 . . . fail to state claims upon which relief can be granted because they are barred under Section 301 due to Plaintiffs' failure to exhaust the contractual remedies provided for in their collective bargaining agreement." The re-

cord contains bits and pieces of evidence, none probative, that some plaintiffs pressed grievances on some unidentified claims, but the questions raised by these defenses were never [*9] presented to, or ruled on, by the district court. Hence, the section 301 issues are not before us.

B.

The complaint in this case contains three counts, two of which are relevant here. [11] Count I, brought under Title VII, alleges that CCBCC discriminates against its black non-supervisory employees, as a class, by maintaining a pattern or practice of race discrimination as to "pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment and intimidation, and other terms and conditions of employment." Count I asks that the maintenance of the pattern or practice be declared unlawful and enjoined, and seeks equitable and legal relief for each of the named plaintiffs. Count II incorporates the allegations and prayers for relief of Count I and alleges, in addition, that CCBCC's conduct "deprive[s] plaintiffs of the same . . . contract[] [rights] as is enjoyed by similarly situated white persons in violation of 42 U.S.C. § 1981." The complaint contains no count in which a plaintiff alleges that he was, or is, a victim of one or more specific features of the above pattern or practice of race discrimination. Rather, the complaint implies - in Counts I and [*10] II and the prefatory allegations preceding Count I - that all nine plaintiffs, and all other black non-supervisory employees of CCBCC, have experienced, and are continuing to suffer from, all of the features of the alleged pattern or practice.

11   Count III, based on Alabama tort law, incorporates Counts I and II and prays for compensatory and punitive damages for, among other things, negligent training and supervision of CCBCC management. Count III is not involved in this appeal.

As we indicate in our introduction to this opinion, by the time the district court took CCBCC's motion for summary judgment under advisement, [12] plaintiffs' claims had been reduced essentially to those we address in this opinion. Plaintiffs' pattern or practice claim, which relates to CCBCC's method of hiring supervisors, had been dismissed because, in the court's view, a pattern or practice claim can only be maintained as a class action and plaintiffs had not sought class certification. [13] What remained of the pattern or practice claim, therefore, were the individual claims: each plaintiff contended that CCBCC had refused to promote him to a vacant supervisory position because of his race. The court granted [*11] CCBCC summary judgment on these claims as time-barred under both Title VII and § 1981. [14] The court then addressed plaintiffs' light work and retaliation

2008 U.S. App. LEXIS 2562, *

claims, brought under Title VII and § 1981, and held that they were either time-barred or, like plaintiffs' individual hostile work environment claims, failed for lack of proof. [15]

12   *See* Fed. R. Civ. P. 56. CCBCC filed nine motions for summary judgment, one in response to each plaintiff's claims. For our purposes, these motions are treated as one motion.

13   The court had dismissed the pattern or practice claim in orders granting CCBCC's motions for judgment on the pleadings. *See supra* note 5. The court dismissed the claim once again on summary judgment, because the claim had been repled and was before the court at that time.

14   The court entered its order granting summary judgment on April 26, 2005. The suit had been filed on August 19, 2002. *See supra* note 2.

15   As indicated at note 7, *supra*, the hostile work environment claims are not involved in this appeal.

We now turn to the issues this appeal presents. We begin with the question of whether the district court erred in ruling that plaintiffs, proceeding individually or collectively [*12] rather than as class action representatives, could not prosecute a pattern or practice claim.

## II.

### A.

[HN1] Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a), entitles the Government [16] to bring a pattern or practice claim on behalf of a class of similarly situated employees for declaratory and injunctive relief against an ongoing act of intentional discrimination in violation of Title VII. [17] A pattern or practice claim for such relief may also be brought under Title VII as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2), by one or more of the similarly situated employees. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 n.9, 104 S. Ct. 2794, 2800, 81 L. Ed. 2d 718 (1984) ("[I]t is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action [as when the Government brings the claim]."). In addition to praying for declaratory and injunctive relief, the complaint may also seek back pay on behalf of individual class members who have been injured by the employer's discriminatory practice. 42 U.S.C. § 2000e-5(g)(1). We have referred to such complaint as presenting a "hybrid Rule 23(b)(2) class [*13] action." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir. 1986). [18]

16   This right belonged to the Attorney General until it shifted to the EEOC on March 24, 1974. 42 U.S.C. § 2000e-6(c). Now the EEOC, upon reasonable cause, may sue private entities, and the Attorney General may sue governmental entities. 42 U.S.C. § 2000e-5(f)(1).

17   The Supreme Court noted long ago that "[t]he 'pattern or practice' language in § 707(a) of Title VII was not intended as a term of art." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16, 97 S. Ct. 1843, 1855, 52 L. Ed. 2d 396 (1977) (internal citation omitted). Regardless of what Congress may or may not have intended, the phrase has come through common usage to represent the sum total of the evils Congress intended to attack in § 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a). *See, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876-77, 104 S. Ct. 2794, 2799-2800, 81 L. Ed. 2d 718 (1984). We use it thus.

18   [HN2] A pattern or practice claim may be brought under § 1981 as well as Title VII, in which case Title VII's substantive rules inform the § 1981 rules of decision. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1109 n.4 (11th Cir. 2001). [*14] In 1991, Congress amended § 1981 - through the enactment of The Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified as amended at 42 U.S.C. § 1981) - to enable plaintiffs to recover compensatory and punitive damages and to demand a trial by jury. Thus, in an employment discrimination suit brought, as here, under Title VII and § 1981, a plaintiff can obtain, in addition to declaratory and injunctive relief under both statutes, back pay under Title VII and § 1981, and compensatory and punitive damages under § 1981. The maintenance of a Rule 23(b)(2) class action for all the relief these two statutes together afford is problematical. See Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004).

[HN3] The court must address two issues before proceeding to adjudicate as a class action a pattern or practice claim. First, the court must determine whether the named plaintiff has standing to prosecute the claim on behalf of similarly-situated employees. *See Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1288 n.7 (11th Cir. 2004). Only someone who claims he has been, or is likely to be, harmed by the ongoing discriminatory practice has an adequate stake in the litigation to [*15] satisfy the "case or controversy" requirement of Article III. See Flast v. Cohen, 392 U.S. 83, 99-101, 88 S. Ct.

1942, 1952, 20 L. Ed. 2d 947 (1968). [19] If the named plaintiff lacks standing to sue, he cannot prosecute the pattern or practice claim, and unless an employee who has been, or is likely to be, harmed by the discriminatory practice is substituted as the named plaintiff, the claim fails.

> 19    In particular, [HN4] a plaintiff must claim facts consistent with the constitutional standing requirements. Bennett v. Spear, 520 U.S. 154, 167, 117 S. Ct. 1154, 1163, 137 L. Ed. 2d 281 (1997) ("[The] irreducible constitutional minimum of standing requires: (1) that the plaintiffs have suffered an injury in fact - an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of - the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will [*16] be redressed by a favorable decision.") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 2136-2137, 119 L. Ed. 2d 351 (1992)) (quotations omitted).

Second, assuming the named plaintiff has standing to sue, the court must determine whether Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy are satisfied, and whether, [20] and whether, as required by Rule 23(b)(2), the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief [] appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

> 20    Rule 23(a) reads:
>
> > [HN5] One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[HN6] If the court resolves these two issues in favor of proceeding [*17] with the class litigation and, at the conclusion of the first stage, finds that the employer has an ongoing practice of discrimination against the plaintiff class, declares the practice invalid and enjoins the practice, the case advances to the second stage. There, individual class members may seek redress for injuries sustained, perhaps in separate proceedings. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 361, 97 S. Ct. 1843, 1868, 1855, 52 L. Ed. 2d 396 (1977). [21] Because the court's "finding of a pattern or practice changed the position of the employer to that of a proved wrongdoer," each class member seeking redress may rely on that finding as circumstantial evidence that the employer made the challenged employment decision with intent to discriminate. Id. at 359 n.45, 97 S. Ct. at 1867. See also Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1238 n.18 (11th Cir. 2000). In that case, the employer bears the burden of proving that the challenged decision, made when the discriminatory practice was in force, was not made in pursuit of that practice but was, instead, made because that claimant was unqualified for the benefit he sought. Cox, 784 F.2d at 1559.

> 21    Claims [*18] of individual class members might be tried together to the extent that they presented common issues of fact and the court deemed it efficient to try the claims as a group in order to avoid inconsistent fact findings on the same evidence.

If the court denies the plaintiffs relief in the first stage, however, because the named plaintiff failed to establish the alleged pattern or practice, the class claim is dismissed. [22] Hence, all that remains are the claims of the individual class members, and those claims will be litigated under the familiar McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). [23]

> 22    A caveat to this statement is that if the court finds the alleged pattern or practice to have been maintained, but does not issue an injunction because the likelihood that the practice will continue is nil, the court may enter a declaratory judgment, and the case will proceed to the second stage as if injunctive relief had been entered as well.
>
> 23    On this point, our opinion in Reynolds v. Roberts, 202 F.3d 1303 (11th Cir. 2000) (Reynolds I), is instructive. In that case, three classes of plaintiffs [*19] challenged the employer's dis-

criminatory policies. *Id.* at 1306. After the beginning of trial, but before the district court made a finding on the issue of liability, the parties entered into settlement negotiations that ultimately resulted in a series of consent decrees. *Id.* at 1307. The court treated a consent decree as an admission of liability on the part of the employer, and ordered it to pay individual damages to certain class members without requiring each member to make out an individual case of discrimination. *Id.* at 1311. We did not agree that the consent decree established the employer's liability and held that "the members of the three plaintiff classes must prove that the [defendant] discriminated against them on account of their race when it failed to hire or promote them . . . [and a] member will establish a prima facie case of racial discrimination if he or she satisfies the *McDonnell Douglas* test." *Id.* at 1319.

B.

1.

Plaintiffs argue that nothing in our precedent precludes them, as individuals, from prosecuting a pattern or practice claim for declaratory and injunctive relief without being certified as class representatives, [24] and that the district court therefore erred [*20] in dismissing their claim. [25] We acknowledge that our precedent does not explicitly foreclose plaintiffs' argument; plaintiffs give no indication, however, of comprehending why private pattern or practice claims for such relief must be litigated either as class actions or not at all.

> 24    Plaintiffs contend that our holding in *Cox, 784 F.2d 1546*, stands as precedent for the proposition that an individual plaintiff, not preceding as a class representative, may bring a pattern or practice claim. Their opening brief says that in *Cox* this circuit held that "individual plaintiffs have the same substantive right to root out a pattern and practice of employment discrimination as do class plaintiffs." Appellant's Brief at 25.
>
> Plaintiffs misconstrue *Cox,* which was a class action case, albeit an odd one. The district court de-certified a class but found as a matter of fact that the defendant employer perpetuated a discriminatory policy. *Id.* at 1558-59. We reversed the court's de-certification order, *id.* at 1558, and explained that the proposed class satisfied the requirements for certification because the members were similarly situated and therefore "were entitled to the presumption that the complained-of [*21] employment practices violated Title VII." *Id.* at 1559. The panel never said that

Title VII entitles an individual plaintiff to seek declaratory or injunctive relief against a class-wide pattern or practice of discrimination.

> 25    The EEOC, as amicus curiae, agrees, and argues that a pattern or practice claim may be brought as an individual action or a class action as the plaintiff chooses.

Plaintiffs' complaint - to the extent it implicates CCBCC's practice of hiring supervisors - presented, in essence, a typical hybrid Rule 23(b)(2) class action. [26] That is to say, the complaint alleged that CCBCC's word-of-mouth practice of hiring supervisors is ongoing and applies to all black CCBCC employees who, like the named plaintiffs, are qualified to hold supervisory positions that go to white employees and white outsiders. And it all but stated that these black employees constituted a class and that the named plaintiffs were representing them. We say this because the complaint asked for the type of relief stage one of a Rule 23(b)(2) class action would afford - a declaration that the word-of-mouth hiring practice discriminated against blacks and an injunction against its continued use - relief [*22] that would inure to the benefit not only of the named plaintiffs but to similarly situated black employees as well. The complaint also presented the claims of the individual plaintiffs in the form of back pay and other monetary relief, stage two of a hybrid Rule 23(b)(2) class action.

> 26    This is true as to Count I, which seeks relief under Title VII, and Count II, which incorporates Count I and seeks relief under § 1981. Thus, in this subpart, we do not differentiate between the two counts.

A Rule 23(b)(2) class certification would give the named plaintiffs standing to represent the claims of the unnamed class members for declaratory and injunctive relief. Without Rule 23(b)(2) certification, however, the named plaintiffs lack standing to pursue such relief for themselves, because the complaint did not allege a likelihood that they will be denied a supervisory position in the future. [27] *See City of Los Angeles v. Lyons, 461 U.S. 95, 106 n.7, 103 S. Ct. 1660, 1667, 75 L. Ed. 2d 675 (1983)* ([HN7] To have constitutional standing to seek injunctive relief, a "[plaintiff] would have to credibly allege that he faced a realistic threat from the future application of the [defendant's] policy."). [*23] And as a prudential matter, absent Rule 23(b)(2) certification, they lack standing to represent the absent unnamed class members. [28] *United Food and Commercial Workers v. BrownGroup, 517 U.S. 544, 557, 116 S. Ct. 1529, 1536, 134 L. Ed. 2d 758 (1996)* ([HN8] "'[T]he general prohibition on a litigant's raising another person's legal rights' is a 'judicially self-imposed limit on the exercise of fed-

2008 U.S. App. LEXIS 2562, *

eral jurisdiction,' not a constitutional mandate.") (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984)). In short, plaintiffs lacked standing to obtain the sort of declaratory and injunctive relief Title VII provides an employee class under Rule 23(b)(2) - the broad scope of relief Congress envisioned in enacting section 707(a) of the Civil Rights Act of 1964. [29]

27  In the case at hand, none of the plaintiffs has alleged that he will likely be denied a specific hiring, i.e., that a supervisory vacancy for which he would be qualified will become available at some future date. Whether this scenario is likely to occur is pure speculation.

28  This point is made clear by the holding in *Franks v. Bowman,* 424 U.S. 747, 755-56, 96 S. Ct. 1251, 1259-60, 47 L. Ed. 2d 444 (1976). [*24] [HN9] A class representative can have standing to continuing prosecuting a class action for relief on behalf of the class members even though he has settled his claim against the defendant and his own case is therefore moot.

29  Plaintiffs contend that the Rules Enabling Act, 28 U.S.C. § 2072, effectively forecloses the district courts from denying the right of a plaintiff to bring a pattern or practice claim individually, rather than as a class action representative. [HN10] The Act prohibits the use of a procedural rule to "abridge, enlarge, or modify a substantial right." 28 U.S.C. § 2072(b). In plaintiffs' view, requiring a plaintiff to bring a pattern or practice claim as a class representative - or not at all - abridges the individual plaintiff's substantive right under Title VII to be free from a pattern or practice of discrimination based only on the technical requirements of Rule 23. What we have said in the preceding text indicates why a plaintiff cannot prosecute a pattern or practice *claim* alone. When proceeding alone, the plaintiff lacks third-party standing to represent the absent class members, and unless he can demonstrate a genuine likelihood that the pattern or practice will continue [*25] and deprive him of a protected right, he lacks constitutional standing.

The prudence of the general prohibition on third-party standing is particularly acute in the employment discrimination context. [HN11] When a complaint appears, as here, to constitute a class action, the statute of limitations is tolled as of the date the complaint is filed, and it remains tolled until the court rejects class certification or the case comes to an end. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 552-53, 94 S. Ct. 756,

765-66, 38 L. Ed. 2d 713 (1974). Potential class members need to know where they stand; are they to become members of a certified class, or must they proceed with their own lawsuits? May they piggyback on the named plaintiffs' EEOC charges, or must they file their own? *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n.8, 95 S. Ct. 2362, 2370, 45 L. Ed. 2d 280 (1975).

Most important, perhaps, are the potential res judicata and collateral estoppel issues that would arise if the law permitted an individual to prosecute a pattern or practice claim without formally representing all similarly-situated employees. As it stands, if a class is certified and the employer prevails on the [*26] pattern or practice issue, unnamed class members would be barred by res judicata from asserting the pattern or practice claim in a separate proceeding, even though they might retain their individual disparate treatment actions against the employer. If a class is not certified and the employee prevails, however, whether the unnamed class members would be barred by the doctrine of issue preclusion fm proceeding against the employer would be problematical.

Here, plaintiffs sought declaratory and injunctive relief in their complaint, thus appearing to represent that they were prosecuting a pattern or practice claim on behalf of CCBCC's black non-supervisory employees at the Mobile facility. But they did not ask the court to certify the class. The court therefore assumed - and we speculate here because the record is silent on the point - that plaintiffs did not intend to seek certification, and entered an order, on CCBCC's first Rule 12(c) motion for judgment on the pleadings, holding that plaintiffs could not prosecute their pattern or practice claim as if they were prosecuting a class action under Rule 23(b)(2). Finally, by the time the court took CCBCC's motion for summary judgment under [*27] advisement, plaintiffs had all but formally abandoned their prayer for declaratory and injunctive relief on their pattern or practice claim. In sum, the district court did not err in dismissing plaintiffs' pattern or practice claim *qua claim.* [30]

30  Several of our sister circuits have already recognized the prudence of limiting a private pattern or practice claim to certified class actions. *See Bacon v. Honda,* 370 F.3d 565, 575 (6th Cir. 2004); *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760-61 (4th Cir. 1998), *vacated on other grounds,* 527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790 (1999); *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 711 (2d Cir. 1998).

2.

Anticipating our holding, plaintiffs argue that the pattern or practice allegations and the evidence they presented in support thereof were intended to perform two

functions in addition to serving as the basis for an independent, free-standing claim: (1) to avoid the Title VII and § 1981 time-bars, and (2) to shift to the employer, as wrongdoer under both statutes, the burden of proving that its refusal to hire them as supervisors was not made in pursuit of its unlawful pattern or practice, but was made instead for a race-neutral [*28] reason. [31] We do not reach the second function because the district court denied relief on plaintiffs' hiring claims on the ground that they were time-barred. [32] We do however, reach the first function and determine the time-bar issues.

[31]    [HN12] Under the *McDonnell Douglas* framework, as described infra, once a plaintiff has established a prima facie case that the challenged employment decision was motivated by an intent to discriminate, the *burden of producing* a non-discriminatory reason for the decision is shifted to the employer, but the *burden of proving* that the non-discriminatory reason was the reason for the challenged action is not. In other words, the burden of proof on the issue of whether the employer was guilty of unlawful discrimination remains with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981). By contrast, plaintiffs wanted to establish the alleged pattern or practice in order to shift the burden of proof on the motivation issue to CCBCC at trial. *See Teamsters,* 431 U.S. at 359, 97 S. Ct. at 1866. Thus, at trial, if plaintiffs introduced evidence showing that they and their similarly situated co-employees [*29] were all qualified for the supervisory vacancies at issue, as they alleged in their complaint, and that CCBCC had engaged in the pattern or practice alleged, they would have been able to withstand a defense motion for judgment as a matter of law made at the close of the evidence, and the court would have instructed the jury that, if it found the pattern or practice alleged, CCBCC had the burden of proving that the challenged employment decision was not made pursuant to such pattern or practice.

[32]    As we indicate in Part IV.A, *infra,* the court erred in dismissing three of the hiring claims as time-barred under Title VII. Since we have the authority to affirm a district court's judgment on a ground not reached by the court, we affirm the court's rejection of one of the hiring claims on the ground that the claim has been abandoned. Given the muddled record concerning the two other claims, we decline to consider affirming on a ground the court did not reach.

III.

Plaintiffs contend that CCBCC's pattern or practice of race discrimination constituted a "continuing violation." [33] Accordingly, they argue, neither Title VII's 180-day limitations period nor § 1981's borrowed statutes of limitations [*30] - two years for hiring and four years for light work assignments - bars recovery for a hiring or light work event that occurred prior to these limitations periods. The district court held that these events constituted discrete acts of discrimination, and therefore were subject to the relevant time bars.

[33]    Plaintiff so contend under the assumption that their pattern or practice claim was properly dismissed *qua claim.* This, however, would not render their pattern or practice evidence irrelevant; it could be used to establish a continuing violation that would avoid the time-bar.

*National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), involved claims by a former employee that his employer had engaged in discrete acts of race discrimination and retaliation and had maintained a racially hostile work environment. The Supreme Court held that [HN13] if the act gives rise to a cause of action under Title VII, then it is subject to Title VII's 180-day limitations period. *Id.* at 114-15, 122 S. Ct. at 2073. The acts the employee complained of were actionable and occurred prior to the 180-day period, so they were barred. As for the hostile work environment claim [*31] that spanned the 180-day period, the Court held the claim actionable, even though some of the acts establishing the claim occurred outside that limitations period. *Id.* at 117, 122 S. Ct. at 2074. [34] This court has applied *Morgan*'s teaching to claims under § 1981 as well as Title VII. *Shields v. Fort James Corp.,* 305 F.3d 1280, 1282 (11th Cir.2002).

[34]    The Court explicitly refrained from considering whether the 180-day limitations period, when applied in the pattern or practice class action context, would bar claims of the individual class members based on acts that occurred prior to that limitations period. *Id.* at 115 n.9, 122 S. Ct. at 2073.

In this case, CCBCC's hiring decisions, light work assignments, and alleged retaliation constituted discrete acts, not acts that were part of a hostile work environment. In that plaintiffs' pattern or practice allegations could not avoid the Title VII and § 1981 time-bars applicable to these acts, the district court did not err in treating such acts as discrete acts under *Morgan* and in holding some of them time-barred. [35] What remains for our decision is whether the court erred in holding three Title VII hiring claims time-barred and in rejecting [*32] on

the merits three § 1981 light work claims, one of which was brought under Title VII as well, and two § 1981 retaliation claims. [36] In the next part, we take up the three hiring claims. We also consider whether the court should have recognized sixteen hiring claims not explicitly asserted in plaintiffs' complaint but mentioned in memoranda plaintiffs filed in opposition to CCBCC's motion for summary judgment. [37]

35   The critical dates for determining whether a claim in this case was time-barred are as follows. The 180-day time-bar for the Title VII hiring, light work, and retaliation claims is measured from the date plaintiffs filed their EEOC charges, August 1, 2000. The discriminatory acts occurring before February 4, 2000, were therefore time-barred under Title VII. The two-year time-bar for the § 1981 hiring claims is measured from the date plaintiffs filed this lawsuit, August 19, 2002. The discriminatory hirings occurring before August 19, 2000, were therefore time-barred under § 1981. The four-year time-bar for the § 1981 light work and retaliatory claims is also measured from August 19, 2002. The light work and retaliatory claims occurring before August 19, 1998, were therefore [*33] time-barred under § 1981.

Given these dates, the district court properly held the following failure-to-hire claims time-barred under both Title VII's 180-day and § 1981's two-year limitations periods:

Davis's and Martin's claims arising out of the February 1999 hiring of John Gilbert as Bulk Account Manager;

Foster's, Fox's, and Law's claims arising out of the August 1, 1999 hiring of Jimmy Hassler; the July 1, 1999 hiring of Wyatt Gerald and the August 2, 1999 hiring of Keith Watson;

Jackson's claim arising out of the December 21, 1998 hiring of Sheila Morris as a Training Supervisor;

Logan's claim arising out of the June 15, 1999 hiring of Kim Welton as a Sales Representative.

The district court properly held the following failure-to-hire claims time-barred under § 1981's two-year limitations period. The court erred, however, in dismissing them as time-barred under Title VII, as we explain in our discussion in Part IV, *infra.*

Davis's claim arising out of the March 2000 hiring of John Gilbert.

Jackson's claims arising out of the March 27, 2000 hiring of David Presnall and the July 28, 2000 hiring of Paul Schum.

The district court properly held the following failure-to-assign light work claims [*34] time-barred under Title VII's 180-day limitations periods:

Law's claim arising in June 1999;

Watson's claim arising on or about July 26, 1999.

36   Plaintiff's opening brief cites claims which, it contends, were pled in the complaint and ignored by the district court in its order granting CCBCC summary judgment. The brief argues that they were sufficient to withstand summary judgment, and asks that they be remanded for trial. We list these claims below, as they appear in the complaint. They were brought under both Title VII and § 1981. They are meritless.

CCBCC discriminated against black union employees by assigning them to "jobs and routes in black communities and to the more difficult assignments in defendant's bottling and production plants." These jobs were subject to the bidding process prescribed by the collective bargaining agreement. None of the plaintiffs alleged, nor in response to CCBCC's motion for summary judgment did he proffer evidence, that he was assigned such work and, if so, whether he bid for it.

CCBCC discharged Lorenzo Martin because of his "race and for his opposition to racial discrimination" on an unspecified date prior to March 28, 2003, the day the plaintiffs [*35] filed their second amended complaint. *See supra* note 2. (Plaintiffs' original complaint was filed August 19, 2002, and contains no reference to Lorenzo Martin's discharge.) The Appendix to plaintiffs' opening brief cites, and attaches, the EEOC charge Martin filed on October 4, 2001, complaining of having been discharged on June 16, 2001, and EEOC's Determination regarding the charge. The Appendix states that these two documents were presented to the district court in opposition to CCBCC's motion to summary judgment: the EEOC charge at "R89-1"; and the Determination at "R36-Exh. G"), an attachment to the second amended complaint. The record gives no indication that the charge was, in fact, presented to the district court. In the charge, Martin states that he was fired "for allegedly violating company policy in regard to sick days," by not calling his supervisor each day he was absent.

2008 U.S. App. LEXIS 2562, *

"White employees [took] sick leave or other leave without having to notify their supervisor every day they were absent from work." He "believes" that the firing was in retaliation "for filing" his EEOC charge on August 1, 2000. If we err in stating that the charge was not before the district court on [*36] summary judgment, the error is of no moment. Martin's self-serving explanation for CCBCC's firing decision lacks probative value. Moreover, his statement about the white employees is rank hearsay and inadmissible for summary judgment purposes.

CCBCC discriminated against Martin on a date not specified by assigning a white employee, instead of him, to a temporary position for eight weeks. The claim fails for alternative reasons. First, Martin did not defend the claim on summary judgment; he thus abandoned it. Second, the record is undisputed that Martin's supervisor did not want to take him from his route sales job for the temporary assignment because Martin was a "more dependable, and a better salesman" than the white employee, a patently non-discriminatory reason.

CCBCC discriminated against Warren Law on account of his race when a supervisor told him that the company had a facial hair policy; Law had a short beard due to medical restrictions, which were on file. Law does not contend that he was required to shave his beard; his injury is that he felt threatened. This does not constitute an actionable claim.

CCBCC discriminated against Michael Fox on July 20, 2000, by reassigning him "from [*37] the sales route he was working, which is considered a desired position," to "a more physically demanding route" and replacing him with a less qualified white employee. CCBCC, responding to the claim in moving for summary judgment, treated it as part of Fox's claim that CCBCC subjected him to a racially hostile work environment. Fox did not respond to this characterization of his claim; in fact, he did not respond to CCBCC's motion for summary judgment. The court denied it as part of its ruling on plaintiffs' racially hostile work environment claim, a claim not before us in this appeal. *See supra* note 7.

37  We note that after the court entered summary judgment, plaintiffs did not move the court pursuant to Fed. R. Civ. P. 59(e) to alter or amend its judgment so as to address the merits of these twenty-five claims.

IV.

A.

Plaintiffs Melvin Davis and Terry Jackson contend that the district court erred in holding their hiring claims time-barred. Davis's claim is based on the hiring of John Gilbert, a white employee, to the position of Bulk Supervisor in "March of 2000." [38] Jackson has two claims: the first is based on the hiring of David Presnall, as Production Supervisor, in March 2000; the [*38] second is based on the hiring of Paul Schum, as Production Scheduler, in July 2000. Both Presnall and Schum are white. We consider these claims in sequence.

38  The complaint states that in "March of 2000, John Gilbert, a white male, was promoted to a position as Bulk Account Manager" and that he "was no better qualified for this position than Davis."

Davis's problem is that plaintiffs' opening brief does not challenge the Gilbert hiring at all. There is no mention of Davis's claim in the brief's Statement of Issues, Statement of Case, or Argument. The only mention of Davis by name is in the brief's Statement of Facts, in footnote 3, which repeats the complaint's allegation that "[i]n March 2000, John Gilbert, a white male, was promoted to a position as Bulk Account Manager." Appellants' Br. at 11, n.3. CCBCC's answer brief says nothing at all about the Gilbert hiring. Plaintiffs' reply brief, though, devotes an entire section to the John Gilbert hiring in March 2000 to the position of Bulk Accounts Manager. The reply brief states for the first time that all of the plaintiffs, which necessarily would include Davis, "established a *prima facie* case" regarding Gilbert's March 2000 hiring [*39] (which was within Title VII's 180-day limitations period). Appellants' Reply Br. at 17.

It is well settled in this circuit that [HN14] an argument not included in the appellant's opening brief is deemed abandoned. *Asociacion de Empleados del Area Canalera v. Panama Canal Comm'n*, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006). And presenting the argument in the appellant's reply does not somehow resurrect it. *Id.*; Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003). The district court denied Davis's claim as time-barred. We affirm the court's decision not on the ground that the claim is time-barred, but on the ground that the claim has been abandoned. We proceed now to a consideration of Jackson's claims.

In granting CCBCC summary judgment, the district court made no mention of Jackson's claims concerning the Presnall and Schum hirings. Rather, the court disposed of them *sub silentio* in stating that all of plaintiffs' hiring claims were time-barred. [39] Jackson argues that the two claims - both arising during Title VII's 180-day limi-

2008 U.S. App. LEXIS 2562, *

tations period - were timely. CCBCC, in its answer brief, admits that the claims are timely. Appellee's Br. at 32. The question thus becomes whether we remand Jackson's [*40] claims to the district court for further proceedings on the merits, or exercise our discretion to affirm the court's disposition of the claims on a ground the court did not explicitly consider. *S* [40]

See *U.S. v. Simmons*, 368 F.3d 1335, 1342 (11th Cir. 2004) ([HN15] "[W]e have the authority to affirm the district court, even if it is on a ground other than that upon which it based its decision."). We have examined the record and cannot say with confidence that Jackson's claims, viewed within the *McDonnell Douglas* framework, fail as a matter of law. [41] We therefore remand them to the district court for further proceedings.

39   In their opening brief, plaintiffs assert that the court failed to rule on Jackson's two claims, which would mean that we do not have a final judgment before us, i.e., "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983) (quoting Catlin v. United States, 324 U.S. 229, 65 S. Ct. 631, 89 L. Ed. 911 (1945)). According to plaintiffs, however, that could not be the case, for, in the Statement of Jurisdiction, the brief states: "Jurisdiction exists as an [*41] appeal from a final judgment." Appellant's Br. at 1. CCBCC's answer brief, in the Statement of Jurisdiction, states: "The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 . . . as an appeal from a final judgment." Appellee's Br. at 1. To be sure, a partial final judgment entered pursuant to Fed. R. Civ. P. 54(b) would qualify as a final judgment under § 1291, but the court was not asked to and did not enter a Rule 54(b) judgment in this case. What we have, then, is a final judgment in which the court, in its sweeping statement that all Title VII claims are time-barred, included Jackson's claims sub silentio.

40   In its answer brief, CCBCC does not ask us to do this. It simply requests that we affirm the district court's ruling, referring us to their motion for summary judgment and the plaintiffs' consolidated response to the motion.

41   [HN16] To establish a prima facie case of intentional discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) was qualified and applied for the position at issue, (3) was rejected, and (4) the position was filled by a person outside the protected class. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763,

768 (2005). [*42] Where, as in this case, the employer uses "an informal [hiring] system in which it does not post openings," Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 533 (11th Cir. 1992), the plaintiff makes out a prima facie case by showing that the employer had a reason to think the plaintiff was interested in the position. See Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1275-76 (11th Cir. 2002). In remanding Jackson's claims to the district court, we intimate no view as to whether the claims are amenable to disposition on summary judgment.

B.

Plaintiffs fault the district court for summarily rejecting some sixteen hiring claims that were set out and argued in the memoranda they filed in opposition to CCBCC's motion for summary judgment, but were not explicitly pled in their complaint. The hirings at issue are the Presnall and Schum hirings in March and July 2000, respectively. [42] The court rejected the claims with this cursory statement: "[t]o the extent plaintiffs seek to include additional [hiring] decisions not identified in the complaint, those additional claims are not properly brought in this action."

42   The Argument section of plaintiffs' opening brief explicitly identifies [*43] the Presnall and Schum hirings, but, as noted in part IV.A, *supra*, makes no mention of the Gilbert hiring of March or April 2000. Accordingly, the Gilbert hiring is not before us.

[HN17] Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The point is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed.2d 80 (1957)). To that end, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1965. [HN18] Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002), it must provide "enough factual matter (taken as true) to suggest" intentional race discrimination. See *Twombly*, 127 S. Ct. at 1965. [43]

43   In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court considered the pleading sufficiency of [*44] a claim under section 1 of the Sherman Act, 15 U.S.C. § 1. It held that a claim under section 1

of the Sherman Act, 15 U.S.C. § 1, must allege facts suggesting an agreement "in restraint of trade or commerce," and that a bald allegation of parallel conduct that may constitute circumstantial evidence of such an agreement is insufficient without more. *Id.* at 1965-66. We understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a). In that case, the Court retired the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), saying it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: [HN19] once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 127 S. Ct. at 1969. The main Rule 8(a) standard now seems to be whether the "allegations plausibly [*45] suggest[] ([and are] not merely consistent with)" a violation of the law. *Id.* at 1966.

Plaintiffs argue that their complaint sufficiently pled sixteen individual claims - two for each plaintiff (other than Jackson) - based on the Presnall and Schum hirings. The closest the complaint ever comes to pleading those sixteen claims, however, is when it states plaintiffs were "denied promotions . . . and treated differently than similarly situated white employees solely because of [] race." That statement epitomizes speculation and therefore does not amount to a short and plain statement of their claim under Rule 8(a). *See id.* at 1964.

Plaintiffs attempt to get around this pleading problem by pointing out that, as alleged in their complaint, they could not cite discriminatory hirings of which they were unaware at the time the complaint was filed; therefore, the Presnall and Schum hirings could not have been cited as having been wrought by CCBCC's secretive hiring policy, which prevented them from knowing when a supervisor was hired. The best they could do, their argument goes, was allege discrimination as to the hirings of which they were actually aware and state generally that they were discriminated [*46] against as to other, unknown hirings as well. Once they learned about the Presnall and Schum hirings, they were diligent in bringing those hirings to the court's attention, having done so in their responses to CCBCC's motion for summary judgment. 44 They urge that this satisfies the demands of Rule 8(a).

44  Plaintiffs responded to CCBCC's motion for summary judgment twice: on November 19, 2003, and January 3, 2005.

Plaintiffs also point out that they should not be expected to plead in their complaint more facts than necessary to satisfy their a prima facie case under *McDonnell Douglas*. Because a Title VII individual discrimination "prima facie case is designed to include only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession," *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (2005), they should not be required to plead a claim based on a hiring unknown to them.

Plaintiffs' position is unavailing because plaintiffs possessed information about the Presnall and Schum hirings before they filed their complaint. The complaint cites those hirings but only in the context of Jackson's claims. If, as the remaining plaintiffs [*47] now contend, they would have applied for those supervisory positions had they known about them, the complaint should have alleged that and claimed that the hirings were discriminatory as to them. 45 It is clear, however, that no plaintiff other than Jackson brought claims based on the Presnall and Schum hirings.

45  The drafter of the complaint knew how to allege in a non-speculative way specific claims of specific plaintiffs. For example, the complaint presented claims for Foster, Fox, and Law based on the respective hirings of Jimmy Hassler, Wyatt Gerald, and Keith Watson in 1999.

V.

Leander Foster and Warren Law argue that the district court erred in granting summary judgment denying on the merits their § 1981 claims of disparate treatment in CCBCC's denial of their requests for light duty. 46 Frederick Watson argues that the court erred in denying three claims. First, CCBCC refused his request for light work on account of his race. Second, CCBCC retaliated against him for filing an EEOC charge on August 1, 2000, by downgrading his job assignment in January 2001. Third, CCBCC discharged him in April 2001 for filing the August 1, 2000 EEOC charge and because of his race. The first claim [*48] was timely under § 1981 but not under Title VII; the second claim was not pled in the complaint but would have been timely under § 1981; and the third claim was timely under both § 1981 and Title VII. We first address Foster's and Law's arguments, then Watson's.

46  Foster brought his claim under Title VII as well as § 1981. Because the standards governing these claims are the same, *Crawford v. W. Elec.*

2008 U.S. App. LEXIS 2562, *

*Co.*, 745 F.2d 1373, 1376 (11th Cir. 1984), we refer to the claim as a § 1981 claim.

A.

The district court denied Foster's and Law's light duty claims because they failed to establish two elements of a prima facie case under *McDonnell Douglas*: (1) that light work was available at the time they requested it, and (2) that the work was given to a similarly situated white employee. As evidence that the court erred as to the first element, they cite the EEOC "Determination[s]," attached to the complaint as Exhibits B and E, which state: "A union representative states that there is always enough work available to allow for light duty assignments." We [47] assume that the court took this statement into account and that it amounted to proof that light work was available at the time Foster and Law [*49] needed it. Their problem is that, as the collective bargaining agreement stipulated, an employee could not be given light work unless it was within his medical restrictions. The complaint does not allege that light work was available within their medical restrictions; nor did Foster or Law respond to CCBCC's motion for summary judgment with proof that it was. As the district court stated in its order granting summary judgment:

> [Plaintiffs] do not cite evidence concerning the nature or duration of their own medical limitations or compare those limitations to those of any of the white co-employees who allegedly were given light duty assignments. They do not identify the types of light duty assignments they might have been able to perform nor offer evidence that any light duty work within their limitations was available at the time of their injuries.

It requires no citation of authority to conclude, as the district court did, that Foster and Law failed to establish their light work claims.

47 The record is silent as to whether Foster and Law presented the alleged wrongful denial of light work to the union in the context of a grievance.

B.

1.

The district court denied Watson's light work claim [*50] without explication. The complaint describes the claim with the following language:

On or about July 26, 1999, Watson suffered an on the job injury which required medical attention. Shortly after being injured, Watson requested to return to work on light duty status. [CCBCC] denied Watson's request on the basis that there were no light duty positions available. CCBCC has allowed several white employees who have sustained similar or worse injuries to return to work in a light duty status. Because Watson was not allowed to return to work in a light duty status, he was forced to apply for workers' compensation benefits, which only equaled sixty-five percent of his regular salary.

This claim was not time-barred; [48] thus, we assume that the court considered the claim on its merits and found it patently frivolous and therefore unworthy of comment.

48 CCBCC's answer brief does not deny that Watson's § 1981 light work claim was timely. Watson brought the claim under Title VII as well, but it was untimely, and plaintiffs' opening brief does not assert the contrary.

Watson was injured while engaged in his Bulk Account Manager duties. [49] Between July 26, 1999, and the termination of his employment [*51] with CCBCC on April 17, 2001, Watson was attended to in Mobile by American Family Care and eight physicians of varying specialties. Watson returned to work in early August 1999, and continued working as a Bulk Account Manager - at his regular pay of $ 959 per week - with the aid of an assistant, who performed the tasks Watson could no longer handle. This arrangement lasted until late October 1999. After that, and for a two week period, he was engaged in training a relief salesman. While doing this, he was paid as a Senior Salesman.

49 The injury was covered, as the parties agreed, by CCBCC's workers' compensation insurance and Alabama's Workers' Compensation statute. Ala. Code § 25-5-1 *et seq.* In early 2000, Watson, represented by counsel not associated with the firm that has represented plaintiffs throughout this litigation, sued CCBCC in the Circuit Court of Mobile County, Alabama, claiming that the injuries he sustained on July 26, 1999, rendered him permanently, partially disabled and seeking compensation therefore. *Watson v. Coca Cola Bottling Co. Consol.*, No. CV-00-3285.51 (Montgomery Cir. Ct. 2001). The case was tried to the court on April 9, 2001, and

2008 U.S. App. LEXIS 2562, *

the court entered judgment [*52] for Watson on April 17, 2001, finding that he had sustained a permanent "injury to the body as a whole, that he [had] sustained a loss of earning capacity as a result of that injury, and that loss of earning capacity [was] in excess of 34.3, thereby entitling him to the two hundred twenty dollars ($ 220.00) per week for the remaining two hundred forth- eight (248) weeks" out of a total of the 300 weeks of disability payments permitted by law. The facts stated in the text following this footnote are drawn for the most part from the circuit court's "Findings of Fact, Conclusions of Law and Judgment" and to some extent from Watson's deposition.

Watson's light work claim fails because, during the time he says he should have been given light work, he was back at work as a Bulk Account Manager, albeit with the assistance of a helper who did the things his disability precluded him from doing. By late October 1999, his ability to continue was doubtful, and by January, his physicians concluded that he was totally disabled, on a temporary basis. We find no basis in the record for vacating the court's judgment on this claim and remanding it for submission to a jury.

2.

Watson claims that CCBCC [*53] retaliated against him - because of the EEOC charge he had filed on August 1, 2000 - after he returned to work in January 2001. The retaliation consisted of what he labels "downgrading" his job assignment. CCBCC referred to it as light work because it fit his medical restrictions. The district court denied the claim on the ground that the complaint did not present it. Alternatively, the court found the claim meritless (1) for lack of a causal connection between the filing of the EEOC charge and the downgrading assignment in January and (2) because EEOC had a lawful reason for the job assignment. We agree with the district court that the claim fails on both grounds.

Plaintiffs' opening brief points to nothing in the complaint that reasonably could be read to allege this claim. Rather, the brief only addresses the merits of the claim, as if it had been well pled, and the record contains some evidence of the circumstances surrounding Watson's return to work.

In January 2000, Watson's physicians found him totally disabled. For fifty-two weeks, he was out of work, drawing temporary total disability workers' compensation benefits at the rate of $ 550 per week. He remained on temporary total [*54] disability until January 2001. By that time, according to his physicians, he had reached maximum recovery, with a permanent partial disability rating, as indicated in the margin. [50] He returned to work early that month under permanent restrictions: "No lifting or pulling in excess of 15 pounds on a frequent basis. No lifting or pulling in excess of 30 pounds on an infrequent basis. No carrying in excess of 25 pounds with right arm. No carrying in excess of 15 pounds with left arm." [51] CCBCC assigned Watson temporary work that accommodated these restrictions. The work included, in his words, "scrubbing [soft drink] coolers." He scrubbed them "in the mall [and] at high schools on [his] hands and knees." He considered this work demeaning and claims he was assigned to it in retaliation for having filed the EEOC charge on August 1, 2000, while he was out of work drawing temporary total disability benefits.

50  *See supra* note 48.

51  This quotation is taken from CCBCC's motion for summary judgment. Watson admitted in his deposition that these restrictions were imposed.

Employing the framework for deciding retaliation claims under Title VII (which governs retaliation claims under § 1981), [52] [*55] the court rejected Watson's retaliation claim on two grounds: (1) the filing of the EEOC charge was too remote to his return to work five months later to establish causation, and (2) CCBCC's reason for assigning Watson to the work at issue - that the decision was based on Watson's medical disability - was legitimate and unrebutted. Assuming for our purposes here that whether the filing of the charge was causally related to the work assignment presents an issue of fact sufficient to withstand summary judgment, we are convinced that CCBCC's unrebutted reason for the assignment is unassailable.

52  [HN20] To make out a prima facie case of retaliation, a plaintiff must show that "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). The challenged action must be materially adverse from the standpoint of a reasonable employee. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53,   , 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). To show the adverse action was causally related to the employee's protected [*56] expression, the plaintiff must prove "that the protected activity and the adverse action are not completely unrelated." *Wideman*, 141 F.3d at 1457 (quotation omitted). Although we interpret "the causal link requirement broadly," *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993), merely showing that the

2008 U.S. App. LEXIS 2562, *

alleged adverse action occurred sometime after the protected expression does not establish the causation element - for temporal progression to be enough, the events must be in "very close" proximity. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) ("the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citations omitted).

3.

Watson claims that his discharge on April 17, 2001, was in further retaliation for having filed the August 1, 2000 EEOC charge and because of his race. The complaint states that

> On April 27, 2001, Watson was terminated allegedly because there were no positions available for him to [*57] fill with his physical limitations. During this same period, three less senior white employees received sales positions that Watson was qualified for and could have performed. . . . Watson was terminated in retaliation for his earlier opposition to race discrimination [, i.e., terminated for filing the EEOC charge on August 1, 2000].

The complaint contains nothing at all that reasonably could be read as an allegation that CCBCC terminated Watson's employment due to race. The district court, in its order granting summary judgment, therefore said nothing about Watson having alleged that his firing was racially motivated. The court did, however, recognize Watson's claim that the firing was retaliatory.

The court held the claim legally insufficient for the same reasons it rejected Watson's claim that the January 2001 downgraded assignment was retaliatory: lack of causation and a lawful, unrebutted reason for the termination. As for the latter ground, CCBCC reasonably concluded that work that Watson could perform given his medical restrictions was unavailable and that it was not required - under Title VII - to create a job that would accommodate his limitations. [53] As a consequence, since [*58] the retaliatory downgrading claim fails for lack of proof, it follows that the employment termination claim fails as well.

53   Implicitly referring to the claim as quoted in the above text, the court concluded that the record contained no support for the claim. It said that the time between Watson's EEOC charge and CCBCC's alleged retaliatory response was insufficient to establish a prima facie case, "especially in light of the legitimate nondiscriminatory reason given and the plaintiff's failure to effectively rebut that reason." In other words, the record contained no proof that three white less senior employees were given jobs that Watson was qualified to perform despite his medical restrictions. Watson did identify, in responding to CCBCC's motion for summary judgment, three injured white employees who were given jobs they could perform within their medical restrictions, but he failed to show any similarity between these employees' situations and his - in terms of when they were afforded the light work, what it constituted, and whether it fit his restrictions.

VI.

A.

If the framers of the Federal Rules of Civil Procedure could read the record in this case - beginning with the plaintiffs' [*59] complaint and CCBCC's answer and continuing to the district court's final order granting CCBCC summary judgment - they would roll over in their graves. In fashioning the Rules, they assumed that complaints would be drafted as clearly and definitively as possible, so that the defendant could understand the cause(s) of action the plaintiff was asserting and frame a responsive pleading, and the district court, having a clear and definitive response before it, could recognize the parties' claims and defenses, identify the issues of fact to be litigated, and proceed to a just result. The framers also assumed that the lawyers appearing before the district courts would adhere to the standards of professional responsibility and conduct, and that, as officers of the court, would be aware that the federal courts constitute a scarce resource for resolving disputes and that their failure to adhere to these standards would likely yield countless untoward, and totally unacceptable, consequences.

This case confounds these assumptions. The complaint is a model "shotgun" pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was [*60] filed. [54] And the defendant's answer is no better. Both pleadings were drafted by AV rated law firms whose appearances in district courts of this circuit, and in this court, have been ubiquitous. [55] The steps counsel took in litigating their respective clients' interests - the pleading strategies they employed - were not taken out of ignorance; they were deliberate, calculated.

2008 U.S. App. LEXIS 2562, *

54    *See, e.g., United States ex el. Atkins v. McInteer,* 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); *M.T.V. v. DeKalb County Sch. Dist.,* 446 F.3d 1153, 1156 n.1 (11th Cir. 2006); *Ambrosia Coal and Constr. Co. v. Morales,* 368 F.3d 1320, 1330 n.22, 95 Fed. Appx. 1320 (11th Cir. 2004); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1296 nn.9-10 (11th Cir. 2002); *Byrne v. Nezhat,* 261 F.3d 1075, 1128-34 (11th Cir. 2001); *Magluta v. Samples,* 256 F.3d 1282 (11th Cir. 2001); *BMC Indus., Inc. v. Barth Indus., Inc.,* 160 F.3d 1322, 1326-27 n.6 (11th Cir. 1998); *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1368 (11th Cir. 1998); *Cramer v. Florida,* 117 F.3d 1258, 1263 (11th Cir. 1997); *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162 passim (11th Cir. 1997) ; *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366-367 (11th Cir. 1996); [*61] *Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1567 (11th Cir. 1995); *Cesnik v. Edgewood Baptist Church,* 88 F.3d 902, 905 (11th Cir. 1996); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1483-84 (11th Cir. 1992); *Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir. 1991); *T.D.S. Inc. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1543-44 n.14 (11th Cir. 1986) (Tjoflat, J., dissenting). This list is just a teaser - since 1985 we have explicitly condemned shotgun pleadings upward of fifty times.

55    We do not know how many times these law firms have appeared in district courts of this circuit. What we do know is that, over the past decade, the firm (whose name has changed from time to time) representing plaintiffs has appeared in this court in 247 appeals. CCBCC's principal defense counsel is a member of a firm that has appeared in this court in 195 appeals. *See generally,* http://www.martindale./Ogletree-Deakins-Nash-Smoak-Stewart/law-firm-         22739-peer-review-ratings.htm; http://www.martindale.com/Wiggins-Childs-Quinn- Pantazis/law-firm-22230-people.htm.

Plaintiffs' complaint, first amended complaint, and second amended complaint are nearly identical, each containing three counts. [*62] In part I.B, *supra,* we quoted from Count I what plaintiffs were contending: race discrimination in "pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment and intimidation, and other terms and conditions of employment," [56] all in violation of Title VII. This all-encompassing discrimination gave the eight named plaintiffs (and the unnamed members of their class) un-

told causes of action, all bunched together in one count contrary to the requirements of Federal Rules of Civil Procedure 10(b). [57] With one exception - the "ability to advance," which became the foundation for plaintiffs' "promotion" claims - Count I failed explicitly to link a particular plaintiff to a particular cause of action. Count II incorporated the allegations of Count I and added nothing new except to allege that "[t]he effect of the defendant's discrimination as outlined [in Count I] has been to deprive the plaintiffs of the same right to make and enforce contracts as is enjoyed by similarly-situated white persons in violation of 42 U.S.C. § 1981 and 1981(a)." Thus, as in Count I, there was nothing in Count II to indicate which plaintiff possessed which cause(s) of action. [*63] [58]

56    When read as a whole, Count I, in its 121 paragraphs of allegations, portrayed CCBCC as a company that practices race discrimination from top to bottom, in every aspect of the terms and conditions of plaintiffs' employment. In short, race discrimination is the company's culture.

57    Rule 8(a)(2), as we observed in part IV.B, *supra,* requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) instructs that [HN21] "Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b) (emphasis added.). Plaintiffs' complaint failed to conform to these instructions. The complaint contained in one count a host of claims based on discrete acts of discrimination committed by CCBCC against different plaintiffs at different times. As we explained in Fikes v. City of Daphne, 79 F.3d 1079, 1082-83 (11th Cir. 1996),

[HN22] These rules work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive [*64] pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

Id. at 1082-83 (quoting T.D.S. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1543 n.14 (11th Cir.1985) (Tjoflat, J., dissenting)).

58   The same was true of Count III, which after incorporating Counts I and II en toto, sought compensatory and punitive damages under Alabama tort law.

No competent lawyer - whether skilled in Title VII litigation or not [59] - could compose an answer to these sweeping and multifaceted acts of discrimination that would be in keeping with what the framers of the Rules envisioned in fashioning Rule 8(b). [60] Yet, CCBCC's attorneys framed one. They used the same shotgun strategy plaintiffs had employed. Their answer contained fourteen defenses. The first defense responded to the complaint paragraph by paragraph, admitting or denying the allegations thereof. The second through the fourteenth defenses were affirmative defenses, and except for the seventh defense, consisted of only one sentence. These affirmative defenses did not respond [*65] to specific causes of action, because the drafter of the answer could not identify the specific causes of action each named plaintiff was purporting to allege. Consequently, the affirmative defenses referred to none of these plaintiffs by name. [61]

59   According to their representations in Martindale-Hubbell, all the lawyers in this case are skilled in civil litigation, including employment litigation. *See generally*, http://www.martindale.com.

60   Rule 8(b)(1) states, in pertinent part: [HN23] "[A] party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1).

61   Examples of defense counsel's apparent inability to comprehend exactly what claims a particular named plaintiff was presenting are CCBCC's ninth, tenth, and thirteen defenses. We refer to the ninth and tenth defenses in note 10, supra, dealing with the application of section 301 of the Labor-Management Relations Act, where CCBCC referred to "some of the claims" and "those claims" without identifying any of the claims or plaintiffs asserting them. The thirteenth defense was equally ambiguous. It stated [*66] that: "Recovery for some or all of the Plaintiffs' claims is barred by the doctrine of laches."

Faced with these pleadings, how the district court could have made heads or tails out of plaintiffs' allegations, and which affirmative defenses applied to which

causes of action, is beyond us. It took several rounds of pleadings, namely CCBCC's Rule 12(c) motions and the parties' memoranda (dealing with those motions and responding to court orders requesting briefing on other points) for the court even to begin the process of narrowing the issues. In the end, as our preceding analysis of plaintiffs' arguments discloses, the court missed some claims altogether. [62] Plaintiffs could have brought this to the court's attention via a motion to alter or amend judgment, [63] but chose, instead, to stand pat and leave the matter to us. [64]

62   CCBCC implicitly acknowledges in its brief that the court appears to have ignored Jackson's claims, which were not time-barred.

63   *See* Fed. R. Civ. P. 59(e).

64   Plaintiffs argued in their opening brief that the court erred in failing to recognize the claims they briefed in opposition to CCBCC's motion for summary judgment. Plaintiffs could have brought those claims [*67] to the court's attention via a motion for leave to amend their complaint pursuant to Fed. R. Civ. P. 15(a) before the court took CCBCC's motion under advisement. They evidently believed that such a motion would have been denied as untimely.

B.

The unacceptable consequences of shotgun pleading are many. First, and perhaps foremost, shotgun pleading inexorably broadens the scope of discovery, much of which may be unnecessary. [65] Who benefits from that? Certainly not the defendant, especially if it compensates its counsel by the hour. Certainly not the plaintiff - unless his lawyer is trying to attach some value to a frivolous claim. In time, the defendant will ask: "when is all of this to end?" Unless the court has intervened and required the attorneys to replead the case, unless the court has definitively identified the parties' claims and defenses and has squeezed the case down to its bare essentials, defense counsel will be unable to give the client an accurate answer. Plaintiffs' counsel knows this, of course, and that the defendant will want out of the case, to settle. So, the case settles, and the shotgun complaint has performed its designed service. So has defense counsel's acceptance [*68] of the shotgun complaint as an appropriate pleading. As we have observed,

Litigating a case framed by shotgun pleadings obviously harms one or both of the parties. Why, then, would a lawyer engage in shotgun pleading? Plaintiffs file shotgun complaints and include frivolous

claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims . . . . Extortion cuts both ways. Depending on his financial resources, a defendant may use a shotgun answer to obtain a settlement that waters down a meritorious claim. In either situation, the extorted settlement provides a financial benefit to the "prevailing" party and a windfall in the form of fees for the "prevailing" lawyer.

*Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 201) (footnotes omitted).

65    According to the declaration of Gregory P. McGuire, CCBCC's lead counsel, which was filed in relation to CCBCC's motion for summary judgment, the fees charged by the court reporter for "all or any part of the transcript necessarily obtained for use in the case" amounted to $ 11,118.60.

Second, in addition to delaying a just disposition of the case at the undue expense of [*69] one or both of the parties, shotgun pleadings, if tolerated by the court, lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard. 66 This is especially harmful to those who have no other forum for the vindication of their rights.

66    Shotgun pleadings delay cases by:

Wasting scarce judicial and parajudicial resources imped[ing] the due administration of justice, and, in a very real sense, amount to obstruction of justice. Although obstruction of justice is typically discussed in the context of criminal contempt, the concept informs the rules of law - both substantive and procedural - that have been devised to protect the courts and litigants (and therefore the public) from abusive litigation tactics, like shotgun pleadings. If use of an abusive tactic is deliberate and actually impedes the orderly litigation of the case, to wit: obstructs justice, the perpetrator could be cited for criminal contempt.

*Byrne*, 261 F.3d at 1131-32 (11th Cir. 1984) (alteration, quotation, and citation omitted).

Third, shotgun pleadings wreak havoc on appellate court dockets. The case at hand is Exhibit A. Due to the nebulous pleadings in this [*70] case and the district court's failure to strip the case down and identify each claim and defense, we had to undertake that task from scratch. The briefs and oral argument were of no use until we scoured the record - including the memoranda the parties gave the district court in support of or in opposition to CCBCC's motions for judgment on the pleadings and, subsequently, for summary judgment - to determine whether what the parties stated in their respective briefs was accurate.

The unvarnished truth is that this court puts no credence in briefs written against a backdrop of a case disposed of on shotgun pleadings. We sift through the record for anything that will corroborate a brief's representation; it is not until that task is finished that we look to the briefs for assistance - namely, to determine whether the appellant has preserved the issues its opening brief presents. In this case, after searching the record, we were able to discard much of it as pure waste and thus substantially reduce the length of this opinion. Had we not approached the appeal in this manner, there is no telling how many mistakes we might have made in identifying plaintiffs' claims, the district court's treatment [*71] of those claims, and the issues plaintiffs preserved for appeal.

Fourth, the mischief shotgun pleadings causes undermines the public's respect for the courts - the ability of the courts to process efficiently, economically, and fairly the business placed before them. 67 At an increasing rate, civil litigants are avoiding the federal district courts; they go elsewhere, to other fora, for the resolution of their disputes, especially complicated commercial disputes. 68 The district courts' civil caseloads reflect this. The contemporary litigation culture has effectively reduced the federal court civil dockets, nationwide. 69 This is not surprising. The exponentially increasing transaction costs the parties must bear in order to resolve their civil disputes in the federal district courts is driving litigants away, especially those involved in complex commercial matters. This has a negative effect on the development of the rule of law in the federal courts. When issues that ought to be presented to the courts for clarification, and to stabilize the rule of law, are removed to non-judicial fora for resolution, the public bears the cost - in the form of more litigation and a judiciary unable [*72] to handle it.

67    [HN24] The American Bar Association Model Rules of Professional Conduct, Rule 3.2, and the Alabama Rules of Professional Conduct,

2008 U.S. App. LEXIS 2562, *

Rule 3.2, both provide that, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." This comment underscores both rules:

> Dilatory practices bring the administration of justice into disrepute. . . . It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

Ala. Rules of Prof'l Conduct R. 3.2 cmt.

68    JAMS provides one of these alternative forums. It advertises as the nations largest provider of ADR services and has a cadre of arbitrators and mediators that includes 147 former judges. *See* http://www.jamsadr.com/neutrals/neutrals.asp.

69    Shotgun pleadings are a significant part of the contemporary litigation culture. They are fueled in no small part by the lawyers' fear that if they do not include everything [*73] but the kitchen sink in their pleadings, they may be sued for malpractice.

Fifth, in Title VII cases, shotgun pleadings undercut the purpose of Congress's enactment of Title VII - to bring peace and equity to the workplace. It requires no subtle analysis to conclude that the wrangling and pure bitterness these pleadings engender does not foster good employer-employee relationships.

C.

What happened in this case was easily avoidable - by a straightforward application of the Rules of Civil Procedure. First, defense counsel, faced with a complaint purporting to combine in one count multiple claims of eight plaintiffs, should have moved the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). [70] The court would have granted the motion - "[w]here, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b)." Anderson v. Dist. Bd. of Trs. of

Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). But counsel chose to reply in kind - by fashioning affirmative defenses that failed to respond explicitly to the specific claims plaintiffs [*74] were independently asserting. In light of defense counsel's failure to request a repleader, "the court, acting sua sponte, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement." Id. at 367. The necessity for doing so should have become starkly apparent on reading the complaint. [71]

70    Rule 12(e) states in pertinent part:

> [HN25] A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must . . . point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

71    Moreover, in the long run, "the 'judicial work that results from shotgun pleadings is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined.'" *Byrne,* 261 F.3d at 1130 n.106 [*75] (quoting *Johnson Enter. of Jacksonville v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998)).

The need for intervention was necessary for another reason, apart from the mess the shotgun pleadings were creating: plaintiffs' initial complaint, like its successors, appeared to allege a class action. [HN26] Where a complaint alleges that the employer is engaging in a pattern or practice of race discrimination against a class of similarly situated employees and seeks declaratory and injunctive relief, the court must determine without delay whether plaintiffs are bringing a Rule 23(b) class action or not. [72] The rights of the putative unnamed class members may be affected - one way or another. In this case, had the court inquired of plaintiffs' counsel, and counsel stated that plaintiffs were not bringing a class action, the

2008 U.S. App. LEXIS 2562, *

court would have entered an order stating explicitly that the case was not being prosecuted as a class action. [73] This would have informed the putative class members that if they had any claims against CCBCC, they would have to pursue them on their own.

> 72     As stated in Rule 23(c)(1)(A), [HN27] "When a person sues . . . as a representative of a class, the court must - at an early  [*76] practical time - determine by order whether to certify the action as a class action."

> 73     We recognize that in dismissing plaintiffs' pattern or practice claim on the ground that a pattern or practice claim cannot be brought outside the class action context, the court implicitly held that this was not a class action case. The court made its ruling in response to CCBCC's motion for judgment on the pleadings. Absent such a motion, query whether the court would have addressed the class action issue before ruling on CCBCC's motion for summary judgment.

D.

[HN28] Title VII authorizes the court to award "a reasonable attorney's fee" to the prevailing party in a Title VII case. [74] This authority extends to the court of appeals. Here, CCBCC is the prevailing party with the exception of two of Jackson's claims, which are being remanded for further proceedings. As to those claims, Jackson is the prevailing party. Given the manner in which both sides chose to litigate this case in the district court, a strategy that complicated our task to no end, we will deny a request for attorney's fees from either side.

> 74     [HN29] "In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing  [*77] party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . .." 42 U.S.C. § 2000e-5(k).

VII.

For the reasons we have stated, the judgment of the district court is affirmed as to all claims except the two Terry Jackson claims we remand for further proceedings.

AFFIRMED, in part; VACATED, in part; and REMANDED.