**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER PERRY, CATRINA KNIGHT, and TALITHA ROBINSON-RUSSELL | * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO. |
| v. | * * | 2:07-CV-1067-WKW-SRW |
| TWEEN BRANDS, INC., JUSTICE STORES, L.L.C., CARISSA GODWIN and AMI LANE, | * * * * | |
| Defendants. | * * | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PARTIAL DISMISSAL
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

## I.    INTRODUCTION

In their Motion for Partial Dismissal, Defendants Tween Brands, Inc., Justice Stores, L.L.C., Carissa Godwin and Ami Lane (collectively referred to herein as "Defendants") established that part of Ms. Robinson-Russell's defamation claim (included in paragraphs 41 and 42 of the Complaint) is based on statements that were purportedly made by Ms. Lane during the State of Alabama Department of Industrial Relations ("ADIR") hearing relating to Ms. Robinson-Russell's unemployment compensation benefits. Under Alabama law, these statements are absolutely privileged and cannot form the basis for a defamation claim. Defendants further established that all allegations of "pattern and practice" race discrimination in employment contained in the Complaint filed by Plaintiffs Jennifer Perry, Catrina Knight and Talitha Robinson-Russell (collectively referred to herein as "Plaintiffs") failed to meet the pleading standard articulated by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct.

1

1955, 1965 (2007).  In sum, Defendants established that paragraphs 41 and 42 in Count III and those portions of Plaintiffs' Complaint that assert allegations of pattern and practice should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Additionally, in their Supplemental Motion for Partial Dismissal, Defendants established that absent a class action, purported pattern and practice of employment race discrimination cannot be pled.

Accordingly, for the reasons set forth below and as previously established in Defendants' opening and supplemental memoranda, Defendants respectfully request that this Court dismiss paragraphs 41 and 42 in Count III of Plaintiffs' Complaint and all allegations of pattern and practice of employment race discrimination, as well as the corresponding broad declaratory and injunctive relief sought in paragraphs 43 and 44, with prejudice.

## II.    LEGAL ARGUMENT

### A.    Ms. Robinson-Russell Cannot Ignore The Statutory Basis And Alabama Common Law that Statements Made In An ADIR Hearing Are Absolutely Privileged And Cannot Form The Basis For Defamation Actions

Ms. Robinson-Russell's reliance on *Thorne v. Big "D" Discount Auto Parts of Dadeville, Inc.*, 92 F.D.R. 55, 58 (M.D. Ala. 1981) and *Ex parte Mardis*, 628 So. 2d 605, 607 (Ala. 1993) to support that record testimony during an unemployment compensation hearing is not privileged under Alabama Code § 25-4-116 is misplaced and misleading for two reasons.  First, Ms. Robinson-Russell fails to make the distinction between privilege as it relates to disclosing "confidential" unemployment compensation record testimony in subsequent litigation versus the "absolute privilege" of the record testimony to form the basis for a defamation action.  The foregoing cases cited by Ms. Robinson-Russell interpreting §25-4-116 are **not** based on defamation claims.  In *Thorne*, the plaintiff's purpose in seeking disclosure of the unemployment compensation proceeding record testimony was to "resolve a conflict in the recollections of

employer and employee as to what was said in the open hearing," in a Fair Labor Standards Act action, not to form the basis for a defamation action. *Thorne*, 92 F.D.R. at 56. Likewise, in *Mardis*, the plaintiff sought the disclosure of the unemployment compensation record for use in a pending sexual discrimination action, not to form the basis for a defamation action. *Mardis*, 628 So.2d at 605.

Furthermore, Ms. Robinson-Russell's argument that, "if Legislature intended the testimony at an unemployment compensation hearing to be protected as confidential by the statutory privilege of § 25-4-116, it has had ample time to amend that Code section to make it state that intent" completely misses the mark. (Plaintiff's Opposition hereinafter "Plt. Opp." p. 3). Indeed, the legislature clearly stated its intent in § 25-4-116, in relevant part: "[a]ll letters, reports, communication and other matters, written or oral, from employer to employee. . . *shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court*." Ala. Code § 25-4-116 (emphasis added). Moreover, the case law interpreting the statute is clear that "communications made in connection with the administration of the Department of Industrial relations are absolutely privileged and cannot form the basis for an action for slander or libel in any court." *Watters v. Louisiana Pacific Corp.*, 156 Fed. Appx. 177, 179 (11th Cir. 2005). *See also Johnson v. Federal Express Corp.*, 127 F.Supp.2d 1268, 1276-1277 (M.D. Ala. 2001) (In a defamation action, "the Court has no trouble finding that the statute means what it says: the privilege is absolute.").

Notably, it appears that Ms. Robinson-Russell argues the Eleventh Circuit in *Watters* erroneously applied § 25-4-116 to oral testimony. This proposition is patently erroneous and should be summarily rejected. Section 25-4-116 clearly states, "all letters, reports, communications and other matters, *written or oral*, . . . shall be absolutely privileged and shall

3

not be made the subject matter or basis for any civil action for slander or libel in any court."
Second, Ms. Robinson-Russell's proposition is illogical and against public policy. Common
sense dictates statements made during quasi-judicial proceedings should be absolutely privileged
and not form the basis for defamation actions. To allow the opposite would cause a chilling
effect and stifle free-flowing testimony during these proceedings. Witnesses would be reluctant
to testify in fear they would have to defend themselves in a defamation action.

Indeed, the Alabama Supreme Court in *Morrison v. Mobile County Board of Education*,
495 So. 2d 1086, 1091-92 (Ala. 1986) held "in defamation actions, communications made in
quasi-judicial proceedings are absolutely privileged." *Id.* In *Morrison,* a student was suspended
from high school when the school found marijuana in his car on the campus. *Id.* The student's
father addressed the suspension with the Board at a public meeting. *Id.* During the meeting, a
school board member commented that the marijuana was found in the car, which comment
allegedly comprised the alleged defamation. *Id.* The father brought a defamation action against
the Board. *Id.* The Court granted the Board's summary judgment and explained:

> An absolute privilege attaches to communications made in the course of quasi-
> judicial proceedings. Where an administrative proceeding is conducted with the
> same safeguards as those provided in judicial proceedings, such as notice and
> opportunity to be present, information as to charges made and opportunity to
> controvert such charges, the right to examine and cross-examine witnesses, the
> right to submit evidence on one's behalf, the right to be heard in person, and the
> presence of an objective decision-maker, that proceeding is quasi-judicial in
> nature and statements made in the course of the proceeding should be absolutely
> privileged.
>
> *Id.*

As in *Morrison*, Ms. Robinson-Russell had the right to examine and cross-examine
witnesses, the right to submit evidence on her behalf, the right to be heard in person in the
presence of an objective hearing officer. Accordingly, the law is clear: "[a]ll letters, reports,
communication and other matters, written or oral, from employer to employee. . . ***shall be***

***absolutely privileged and shall not be made the subject matter or basis for any civil action for***

***slander or libel in any court***." Ala. Code 25-4-116 (emphasis added). As such, this Court should

dismiss Ms. Robinson-Russell's defamation claim.

**B.      Plaintiffs' Allegations of Pattern and Practice Discrimination are Not Sufficiently Plead**

It must be noted, at the outset, that allegations of pattern and practice and their

corresponding declaratory and injunctive relief are contained in Plaintiffs' Complaint. (See

Plaintiffs' Complaint "Pl. Comp." ¶¶ 22, 26, 33, 43, and 44). Plaintiffs cannot ignore that they

made these broad allegations and claims in their Complaint. Therefore, Defendants are subject

to all possible ramifications of such. Likewise, because they made the assertion of pattern and

practice of discrimination Plaintiffs are required to "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007)

(quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)). Indeed, Plaintiffs are

required to assert "enough facts to state a claim to relief that is plausible on its face," for each of

the allegations contained in the Complaint. *Davis, et al. v. Coca-Cola Bottling Company,*

*Consolidated*, Civ. No. 05-12988, 2008 U.S. App. LEXIS 2562 *43-44 (11th Cir. Feb. 6, 2008);

*Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007). Thus,

Plaintiffs' Response Brief assertions that "Plaintiffs 'pattern and practice' language should not be

read to constitute a free-standing pattern and practice claim" (Plt. Br. p. 8) is irrelevant.

Likewise, Plaintiffs argument that the Supreme Court in *Twombly,* by requiring that a

complaint contain sufficient facts to support a "plausible" claim for relief, somehow equates to a

"heightened" pleading standard and is therefore, not applicable to employment cases, is

erroneous. To support their argument, Plaintiffs quote *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506 (2002), which states "a heightened pleading standard in employment discrimination cases

conflicts with FRCP 8(a)(2)." Thankfully, the *Twombly* decision clarifies the difference between the "heightened" pleading standard discussed in *Swierkiewicz* and a requirement that a complaint contain sufficient facts to support a "plausible" claim for relief. Specifically, the *Twombly* Court stated that it reversed the *Swierkiewicz* Court of Appeals decision because it had "impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege '*specific facts*' beyond those necessary to state his claim and the ground showing entitlement to relief." *Twombly*, 127 S.Ct. at 1973-74 (emphasis added). Whereas, the Court in *Twombly* did not require "a heightened fact pleading of specifics," rather "only enough to state a claim to relief that is plausible on its face."

In fact, the *Twombly* decision, like *Swierkiewicz*, provides even further clarification of Federal Rule of Civil Procedure 8(a)(2), which states that a complaint must include only a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). The *Twombly* Court states that while a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level . . .," in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1964-65 (citations omitted)(emphasis added).[1]

Undeniably, Plaintiff ignores the plethora of Eleventh Circuit employment cases that apply the *Twombly* pleading standard, including the very recent Eleventh Circuit case *McCray v Potter*, which articulated the *Twombly* pleading standard and affirmed dismissal of employee's

---

[1] *Twombly* also clarifies the holding in *Conley v. Gibson*, 78 S.Ct. 99 (1957), a case upon which *Swierkiewicz* relies, observing that *Conley's* "no set of facts" language has been taken out of context and has been "questioned, criticized, and explained away long enough." *Twombly*, 127 S.Ct. at 1969. Therefore, the Supreme Court unequivocally retired all suggestions that the "no set of facts" language is the standard.

Title VII claim for failure to state a valid claim. 2008 U.S. App. LEXIS 1076 (11th Cir. 2008) (attached as Exhibit A). *See also Davis,* 2008 U.S. App. LEXIS at *43-44; *Pearson's Pharm., Inc. v. Express Scripts, Inc.,* 505 F.Supp.2d 1272, 1275 (M.D. Ala. 2007) (applying *Twombly* standard and granting defendant's motion to dismiss); *Streeter v. City of Pensacola,* 2007 U.S. Dist. LEXIS 92603, 21-28 (N.D. Fla. 2007) (applying *Twombly* standard and dismissing claims of promotion discrimination pursuant to Title VII, FCRA, and § 1981) (attached as Exhibit B).  It is clear that the *Twombly* pleading standard is applicable to and controlling in Eleventh Circuit employment cases.

What is also clear is that Plaintiffs' conclusory statements in paragraphs 22, 26, and 33 of their Complaint do not reasonably allege a "plausible" factual basis for the pattern and practice they claim exists and for which they claim they are entitled to relief.  (Pl. Comp. ¶¶ 22, 26, 33, 43, and 44).  In fact, paragraphs 26 and 33 are *entirely* void of any information that would put Defendants on notice of what policies or practices or actions are discriminatory with respect to hiring or assignments.[2]  To be sure, Plaintiffs' Complaint does not contain a single fact regarding discriminatory hiring and assignment practices.  Plaintiffs merely use the label of "pattern and practice" in the most blatant, conclusory fashion as though it is in and of itself a fact.  Plaintiffs have failed to nudge their claims across the line from entirely conclusory to plausible and without more, such allegations cannot survive a motion to dismiss.

## C.    Allegations of Pattern and Practice May Not Be Used to Bolster Claims Brought By Individual Plaintiffs Post–*Davis*

Plaintiffs argue that, while they do not intend to bring a separate Count of pattern and

---

[2] Paragraph 26 of the Complaint simply concludes that "Defendant Tween Brands has engaged in a pattern and practice of systemic racial discrimination, particularly with regards to hiring, assignments, and promotion of African-American individuals."  (Pl. Comp. ¶ 26).  Similarly, paragraph 33 of the Complaint concludes that

practice discrimination against Defendants, they may use pattern and practice evidence to bolster their individual prima facie case under *McDonnell Douglas* or to show pretext.  To support their proposition, Plaintiffs point to only two district court cases, both of which pre-date *Davis, et al. v. Coca-Cola Bottling Company, Consolidated,* Civ. No. 05-12988 (11th Cir. Feb. 6, 2008). Once again, Plaintiffs ignore Eleventh Circuit precedent.    Post *Davis,* employment discrimination pattern and practice claims, allegations, and requests for declaratory and injunctive relief brought by individuals are definitively no longer viable in the Eleventh Circuit, if they ever were.

As an initial matter, as discussed *supra,* by including in their Complaint broad allegations of pattern and practice, Plaintiffs are indeed making a claim of pattern and practice discrimination and asking the Court to rule on such by requesting the corresponding broad declaratory and injunctive relief found in paragraphs 43 and 44.  (Pl. Comp.¶¶ 22, 26, 33, 43, and 44).  Notably, where the plaintiffs in *Davis* "sought declaratory and injunctive relief in their complaint," like the Plaintiffs in the present case do, the *Davis* court pointed out that they thus, "appear[ed] to represent that they were prosecuting a pattern or practice claim on behalf of [similarly-situated employees]." *Davis,* 2008 U.S. App. LEXIS 2562 at * 25-26.

The first problem with Plaintiffs' pattern and practice assertions is that, just as in the *Davis* case, there is an issue of standing that presents itself.  "Only someone who claims he has been, or is likely to be, harmed by the by ongoing discriminatory practice has an adequate stake in the litigation to satisfy the 'case or controversy' requirement of Article III." *Id.* at *14-15 (citing *Flast v. Cohen,* 88 S.Ct. 1942, 1952 (1968)).  Despite Plaintiffs' Response brief assertions to the contrary, Plaintiffs have not pled any facts, much less facts to plausibly demonstrate, that

---

"Defendant Tween Brands has engaged in a pattern and practice of racial discrimination, particularly against

they have been or are likely to be harmed by the allegedly ongoing patterns and practices of discriminatory hiring and assignments as alleged in Paragraph 26 of the Complaint.[3] (Pl. Comp. ¶ 26). Paragraph 33[4] is even more broad and bereft of any facts to demonstrate a claim for relief that is plausible on its face. (Pl. Comp. ¶ 33). Just as the court found in *Davis*, Plaintiffs in the present case do not have the standing necessary to prosecute a claim on behalf of similarly-situated employees.

Even if we were to accept Plaintiffs' premise that because they are not alleging a separate count of pattern and practice of discrimination but merely make such assertions to bolster their discrimination claims, their allegations should be dismissed or in the alternative stricken from the Complaint. In order for Plaintiffs to bolster their individual claim of discrimination via pattern and practice evidence, they would necessarily need to establish that Defendants indeed have a pattern and practice of discrimination. To establish this allegation, as is the case with class actions proceeding under Rule 23, this Court would be required to make a judicial determination of such pattern and practice. Such a "determination" would, as the *Davis* court expressly stated, inevitably present potential *res judicata* and collateral estoppel issues where all allegedly similarly-situated employees are not represented in the instant case. *Id.*

For the foregoing reasons, the *Davis* decision, in addition to precluding pattern and practice claims absent a Rule 23 class action, precludes individual plaintiffs from attempting to bolster their individual prima facie discrimination cases with pattern and practice evidence. Given Eleventh Circuit authority, Plaintiffs' allegations of pattern and practice discrimination, as

---

African-American individuals." (Pl. Comp. ¶ 33).

[3] Paragraph 26 of the Complaint simply concludes that "Defendant Tween Brands has engaged in a pattern and practice of systemic racial discrimination, particularly with regards to hiring, assignments, and promotion of African-American individuals." (Pl. Comp. ¶ 26).

well as the corresponding declaratory and injunctive relief sought, must be dismissed or in the alternative stricken.

## III.    CONCLUSION

WHEREFORE Defendants respectfully request that the Court dismiss Plaintiff Talitha-Robinson-Russell's defamation claim set forth in Count III of the Complaint in paragraphs 41 and 42.    Defendants further respectfully request that the Court dismiss those portions of the Plaintiffs' Complaint that assert a "pattern and practice" of alleged systemic discrimination, as well as the corresponding broad declaratory and injunctive relief sought, as set forth in paragraphs 22, 26, 33, 43, and 44.    In the alternative, Defendants respectfully request that the Court strike all allegations of a "pattern and practice" of alleged systemic discrimination and the corresponding broad declaratory and injunctive relief sought.

Respectfully submitted this 28th day of February 2008.

s/ R. Bradley Adams
R. Bradley Adams
Alabama Bar No. ASB 8742-E67A
Email: radams@littler.com
LITTLER MENDELSON. P.C.
63 South Royal Street, Suite 709
Mobile, AL 36602
Phone: 251-432-0413
Fax:  251-432-0427

Grady B. Murdock, Esq.
Illinois Bar No. 1992236
Littler Mendelson, PC
200 North LaSalle Street, Suite 2900
Chicago, IL 60601-1014
Phone: 312-795-3233
Fax:  312-372-7880
Email:  gmurdock@littler.com

---

[4] Paragraph 33 of the Complaint concludes that "Defendant Tween Brands has engaged in a pattern and practice of racial discrimination, particularly against African-American individuals." (Pl. Comp. ¶ 33).

Terese Connolly, Esq.
Illinois Bar No. 6282685
Littler Mendelson, PC
200 North LaSalle Street, Suite 2900
Chicago, IL 60601-1014
Phone:  312-795-3233
Fax:  312-372-7880
Email:  tconnolly@littler.com

Latesa Bailey, Esq.
Georgia Bar No. 107705
Littler Mendelson, PC
3348 Peachtree Road, N.E., Suite 1100
Atlanta, GA 30326-1008
Phone:  404-760-3942
Fax:  404-233-2361
Email:  lbailey@littler.com

**ATTORNEYS FOR DEFENDANTS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER PERRY, CATRINA KNIGHT, and TALITHA ROBINSON-RUSSELL | * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO. |
| v. | * * | 2:07-CV-1067-WKW-SRW |
| TWEEN BRANDS, INC., JUSTICE STORES, L.L.C., CARISSA GODWIN and AMI LANE, | * * * * | |
| Defendants. | * | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2008, I electronically filed the foregoing **Defendants' Reply Memorandum in Support of Their Motion for Partial Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys of record for Plaintiffs: **Christopher Stephen Genereux, Esq.** (csgenereux@tmgslaw.com), **Jacqueline C. Smoke, Esq.** (jcsmoke@tmgpc.com), and **Tyrone Carlton Means, Esq.** (tcmeans@tmgpc.com), Attorneys for Plaintiff.

s/R. Bradley Adams
R. BRADLEY ADAMS  (ASB 8742-E67A)
**Attorney for Defendants**
Littler Mendelson, P.C.
63 South Royal Street, Suite 900
Mobile, Alabama 36602
Telephone:  251-432-4540
Fax:  251-432-0427
Email:  radams@littler.com

LEXSEE 2008 U.S. APP. LEXIS 1076

**MILDRED MCCRAY, Plaintiff-Appellant, versus JOHN E. POTTER, Defendant-Appellee.**

**No. 06-16678 Non-Argument Calendar**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

*2008 U.S. App. LEXIS 1076*

**January 16, 2008, Decided**
**January 16, 2008, Filed**

**NOTICE:**    PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Northern District of Georgia. D. C. Docket No. 05-02937-CV-CC-1.

**DISPOSITION:**    AFFIRMED.

**COUNSEL:** Mildred McCray, Appellant, Pro se, ATLANTA, GA.

For John E. Potter, Appellee: Stephen H. McClain, U.S. Attorney's Office-Northern District of GA, ATLANTA, GA.

**JUDGES:** Before ANDERSON, CARNES and BARKETT, Circuit Judges.

**OPINION**

PER CURIAM:

Mildred McCray, an employee of the United States Postal Service proceeding *pro se*, appeals the district court's decision to dismiss her complaint alleging employment discrimination under Title VII for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)* or, alternatively, to deny her cross-motion for summary judgment. [1] McCray also appeals the district court's refusal to exercise supplemental jurisdiction over her state law claims. On appeal, McCray argues that her claims should not have been dismissed. Alternatively, she argues that her case should have been allowed to proceed because the Postal Service provided no evidence to disprove her claims. Liberally construed, she also argues that she should be allowed to proceed on her state law tort claims. [2] Because we find that even under the most liberal construction of McCray's complaint she [*2] has failed to make out a claim for relief under Title VII, we affirm the dismissal of her complaint. [3]

1    The Postal Service responded to McCray's complaint with a motion to dismiss or, alternatively, a motion for summary judgment. McCray did not respond to the Postal Service's motion but instead filed her own motion for summary judgment.

2    Considering our disposition of this appeal, we find that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over McCray's state law claims because all other claims over which the court had original jurisdiction were dismissed. *See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004)*. "We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney, 370 F.3d at 1089; see also 28 U.S.C. § 1367(c)*.

3    We need not address issues on appeal beyond those that decide the case. *See In re Club Assocs., 956 F.2d 1065, 1068 n.9 (11th Cir. 1994)*.

We review a district court order granting a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* for failure to state a claim upon which relief can be granted *de novo. Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004)* [*3] (citation omitted). In discussing a *Rule 12(b)(6)* motion to dismiss, we have held many times that "the pleadings are construed broadly," *e.g., Levine v.*

**EXHIBIT A**

2008 U.S. App. LEXIS 1076, *

*World Fin. Network Nat'l Bank, 437 F.3d 1118, 1120 (11th Cir. 2006)*, and that the allegations in the complaint are viewed in the light most favorable to the plaintiff, [4] *e.g., Chepstow Ltd., 381 F.3d at 1080*. However, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,    U.S.   , 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)*. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court's most recent formulation of the standard is that the complaint must have "enough factual matter (taken as true) to suggest" the required elements. *Id.* The Court instructed that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Id.*

4    We of course are also mindful of McCray's *pro se* status and accordingly hold her pleadings to a less stringent standard. *Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)*. [*4] We note that the magistrate court below showed significant effort at its hearing on the motion to dismiss to develop McCray's complaint and understand the basis of her discrimination claim. We are confident that, even though McCray did not have the assistance of counsel, the court afforded her every opportunity to present her arguments.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's race, color, religion, sex, or national origin.*" *42 U.S.C. § 2000e-2(a)* (emphasis added). The plaintiff in an employment discrimination lawsuit must show that an adverse employment action was related to an employer's discriminatory animus towards the employee based on a protected characteristic. *Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999)*. Title VII does not encompass every tribulation a worker may experience in the workplace, but instead only proscribes employment discrimination based on race, color, religion, sex, or national origin. *See, e.g., Gilchrist v. Bolger, 733 F.2d 1551, 1553-54 (11th Cir. 1984)*.

McCray [*5] failed to state a valid Title VII claim because she did not allege that any discriminatory act was taken because of her race, color, religion, sex, or national origin. McCray's complaint alleged that her employer "fail[ed] to provide [her] with the equal rights, opportunities, and the distress relief that [she] requested[,] repeatedly causing [her] illness and losses." She alleged discriminatory conduct in the form of "abusive service as an employee of the United States Postal Service." Her form complaint selected "other" as her category of discrimination (from among race, religion, sex, national origin, and other). At its hearing, the magistrate court asked McCray whether she felt the abuse she suffered was because of her sex, race, religion, or national origin; McCray did not indicate she felt discriminated against because of any protected status under Title VII. Put simply, Title VII does not protect McCray from the kinds of discrimination she alleged. The district court therefore did not err in granting the Postal Service's *Rule 12(b)(6)* motion for failure to state a claim. [5]

5    On appeal, McCray also argues that she should be allowed to amend her complaint. However, an amendment [*6] would be futile because McCray's testimony at oral argument revealed that she did not believe her abuse to be related to or because of any Title VII protected status, and she has not demonstrated any other basis for relief on appeal. *See Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000)* (motion to amend may be denied if amendment is futile). Additionally, undisputed evidence showed that McCray's claim was barred by Title VII's 90 day statute of limitations following final agency action: the EEOC issued its notice of final action to McCray on October 30, 2003, more than two years before she filed the present complaint in the Northern District of Georgia on November 3, 2005. *42 U.S.C. § 2000e-16(c)* (requiring plaintiff to file suit within 90 days of receipt of notice of final action); *Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999)*.

AFFIRMED. [6]

6    The Appellant's request for oral argument is DENIED.

LEXSEE 2007 U.S. DIST. LEXIS 92603



Analysis
As of: Feb 28, 2008

**DEREK STREETER, JOSEPH GLOVER, JOSE COBBS, and PAUL JOHNSON, Plaintiffs, v. CITY OF PENSACOLA and PENSACOLA PROFESSIONAL FIRE-FIGHTERS LOCAL CHAPTER 707, Defendants.**

**Case No.: 3:05cv286/MCR**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA, PENSACOLA DIVISION**

*2007 U.S. Dist. LEXIS 92603*

**December 18, 2007, Decided**
**December 18, 2007, Filed**

**PRIOR HISTORY:** *Streeter v. City of Pensacola, 2007 U.S. Dist. LEXIS 18215 (N.D. Fla., Mar. 15, 2007)*

**COUNSEL:** [*1] For DEREK STREETER, JOSEPH GLOVER, JOSE COBB, PAUL JOHNSON, Plaintiff: CECILE M SCOON, LEAD ATTORNEY, PETERS & SCOON PA, PANAMA CITY, FL.

For CITY OF PENSACOLA, PENSACOLA PROFESSIONAL FIREFIGHTERS LOCAL CHAPTER 707, Defendant: LEONARD J DIETZEN, LEAD ATTORNEY, RUMBERGER KIRK & CALDWELL PA, TALLAHASSEE, FL; AVERY DEAN MCKNIGHT, MICHAEL MATTIMORE, ALLEN NORTON & BLUE PA - N MONROE ST, TALLAHASSEE, FL; MICHAEL MATTIMORE, LEAD ATTORNEY, RUMBERGER KIRK & CALDWELL PA, TALLAHASSEE, FL.

**JUDGES:** M. CASEY RODGERS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** M. CASEY RODGERS

**OPINION**

**ORDER**

In this action plaintiffs Derek Streeter ("Streeter"), Joseph Glover ("Glover"), Jose Cobbs ("Cobbs"), and Paul Johnson ("Johnson") (together, "plaintiffs") sue defendants City of Pensacola ("the City") and Pensacola Professional Firefighters Local Chapter 707 ("the Union") (together, "defendants") for various civil rights violations. Pending are the motions to dismiss or, in the alternative, for more definite statement filed by the City and the Union. Plaintiffs have filed a single response to the motions. As explained below, the court grants the motions in part and denies them in part.

**BACKGROUND**

Plaintiffs, all of whom are African-Americans, [*2] are firefighters employed by the City and members of the Union. In this action plaintiffs assert that defendants have subjected them to racial discrimination and retaliation in the workplace. The court previously required plaintiffs to replead their first and second amended complaints because it concluded that the complaints failed to present a "short and plain statement" of plaintiffs' claims, as required by *Federal Rule of Civil Procedure 8*. The court further concluded that the complaints constituted "shotgun pleadings" and, in contravention of *Rule 10(b)*, their allegations commingled claims within a single count.

In response to the court's order plaintiffs filed a third amended complaint, in which they assert the following claims:

Count I, race discrimination (hostile work environment) under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e, et seq.* ("Title VII"), against the City;

**EXHIBIT B**

Count II, race discrimination (adverse action) under Title VII, against the City;

Count III, race discrimination (hostile work environment) under the Florida Civil Rights Act of 1992 ("FCRA"), *Fla. Stat. § 760*, against the City.

Count IV, race discrimination (adverse action) under the FCRA, against [*3] the City.

Count V, race discrimination (equal protection) under *42 U.S.C. § 1983*, against the City.

Count VI, retaliation under Title VII, against the City.

Count VII, retaliation under the FCRA, against the City;

Count VIII, violation of the Family Medical Leave Act, *29 U.S.C. § 2601, et seq.*, by plaintiff Glover only against the City.

Count IX, race discrimination under Title VII, by plaintiffs Streeter, Cobbs, and Johnson only against the Union.

Count X, race discrimination under the FCRA, by plaintiffs Streeter, Cobbs, and Johnson only against the Union.

Count XI, race discrimination under *42 U.S.C. § 1981*, by plaintiffs Streeter, Cobbs, and Johnson only against the Union.

Attached to the third amended complaint are copies of the Equal Employment Opportunity Commission ("EEOC") charges of discrimination brought against the City and the Union by each of the plaintiffs. [1] Also attached to the complaint are copies of the plaintiffs' right to sue letters from the EEOC.

1   The courts may consider any written instrument attached to the complaint as such attachments become part of the pleading "for all purposes." *Fed.R.Civ.P. 10(c)*. [*4] Accordingly, plaintiffs' EEOC charges are properly considered here.

In nearly identical language, each of the plaintiffs' charges against the City alleges the following:

Racial Discrimination. Seniority is only enforced against African Americans. If an African American has seniority to junior White firefighters, then seniority does not matter. White firefighters are given preferential treatment with

regards to on-the-job training for skills needed for promotion, promotion and testing opportunities. I have been humiliated and suffered loss of pay and promotions.

The charges against the Union allege:

Racial Discrimination. Firefighter's Union Local 707 has not protected its African American union members against unfair treatment at the City of Pensacola Fire Department. The Union consistent makes deals with the city and handles representation of Firefighters in a way that consistently favors the white Firefighters over the African American Firefighters. When we opposed some of the Union deals favoring the whites, the Union retaliated by being more secretive towards the African American Union Members. I have been humiliated and suffered loss of pay and promotions while employed at the City [*5] of Pensacola. I pay for Union representation and have not received the benefit of that representation.

Glover's charge against the City is dated March 27, 2004; there is no record of any charge filed against the Union by Glover. The other plaintiffs' charges, against both the City and the Union, are dated from April 1, 2004, through August 3, 2004.

In their instant motions defendants assert that plaintiffs' third amended complaint suffers from many of the same defects as did their prior, rejected complaints. According to defendants, given plaintiffs' repeated failure to comply with the court's orders the instant complaint should be dismissed in its entirety with prejudice. In the alternative, the defendants ask that the court require plaintiffs to once again file a more definite statement. The defendants also argue that the majority of the counts are due to be dismissed pursuant to *Rule 12(b)(6)* for failure to state a claim upon which relief can be granted and that certain of the Title VII counts and the *§ 1983* count should be dismissed for failure to fully exhaust all administrative remedies.

Plaintiffs respond that the third amended complaint satisfies the letter and intent of *Rules 8* [*6] and *10* such

that the defendants have adequate notice of the claims against them and that all prior defects cited by the court have been remedied. Regarding their exhaustion of administrative remedies, plaintiffs contend that they timely filed their complaints with the EEOC and the Florida Commission on Human Relations and that their claims have been appropriately exhausted.

## DISCUSSION

First, plaintiffs' third amended complaint will not be dismissed with prejudice on the grounds the complaint continues to violate the court's previous instructions and *Rule 10(b)*. ² The allegations of each count in the instant complaint still tend to be overly broad. Additionally, it is apparent that to a large extent plaintiffs have simply deleted extraneous statements rather than redrafted the substance of their claims. Even so, the court is satisfied that a single legal theory pertaining to each count is now reasonably identifiable, especially when the text is considered together with the individual heading for each count. Thus the court's prior concern regarding plaintiffs' commingling of claims has been alleviated. Additionally, while the complaint contains some misnumbered paragraphs (defendants advise [*7] there actually are 205 paragraphs rather than the 190 identified in the complaint), even if some degree of confusion results from this defect, it is slight and can readily be compensated for; the misnumbering alone does not warrant rejection.

> 2  *Rule 10(b)* requires that the allegations of a claim "shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . [and] [e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count." *Fed.R.Civ.P. 10(b)*.

Nor does the court find the complaint to be an impermissible shotgun pleading which requires a more definite statement pursuant to *Rule 12(e)*. ³ While the complaint still contains many repetitive and prolix allegations, plaintiffs have deleted many (though not all) of the redundant passages and have reduced the overall length of the complaint from seventy-three to thirty-three pages. ⁴ While still far from a model of clarity or succinctness, the complaint is not now so extensive or confused as to make it impossible to determine what is being alleged or against whom. *See Byrne v. Nezhat, 261 F.3d 1075, 1128-29, 1133 (11th Cir. 2001)*; [*8] *BMC Industries, Inc. v. Barth Industries, Inc., 160 F.3d 1322, 1327 n. 6 (11th Cir. 1998)*. The allegations are not so vague or ambiguous that a responsive pleading could not possibly be framed.

> 3  Pursuant to *Rule 12(e)*, the court may require a more definite statement if the complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Fed.R.Civ.P. 12(e)*.

> 4  Nevertheless, it is noted that plaintiffs apparently attempted to comply, at least in part, with the court's observation that the complaint was excessively lengthy by reducing the side margins to a dimension slightly less than the approximately 1.25 inches called for in Local Rule 5.1(B)(3). While plaintiffs' formatting does not so deviate from the specifications set out in Rule 5.1(B)(3) so as to warrant rejection of their complaint, plaintiffs should be aware that the court strictly enforces such requirements.

The court therefore finds that the third amended complaint neither needs to be dismissed for violation of *Rule 10* nor to be repleaded pursuant to *Rule 12(e)*. Accordingly, the court shall proceed to considering whether plaintiffs have exhausted their administrative remedies and [*9] then address defendants' arguments for dismissal under *Rule 12(b)(6)*.

### Exhaustion of Administrative Remedies

The City contends that Counts I, III, and V should be dismissed for failure to exhaust administrative remedies because the claims are "clearly outside the scope of Plaintiffs' charges of discrimination against the City, allegations of new acts of discrimination not reasonably related to the charged conduct [sic], and time-barred under Title VII and the FCRA." (Doc. 62 at 13). Adopting the principles of the City's argument, the Union likewise seeks dismissal of Counts IX and X for plaintiffs' failure to exhaust administrative remedies.

In order to litigate a claim for discrimination under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. ⁵ *Gregory v. Georgia Department of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam)*; *Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1332 (11th Cir. 2000)* (stating that "[n]o action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge"). EEOC regulations "provide that charges [*10] should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Alexander, 207 F.3d at 1332*. Although "the scope of an EEOC complaint should not be strictly interpreted," the scope of the EEOC's resulting investigation will limit the claims a plaintiff may bring in a Title VII judicial action to those that "can reasonably

be expected to grow out of the charge of discrimination." *Gregory, 355 F.3d at 1280.* The Eleventh Circuit has held that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." *Id. at 1279-80* (citation omitted). In examining whether a plaintiff's Title VII claim has been properly exhausted, the court must inquire whether the claims pursued in the judicial proceeding are "like or related to, or grew out of, the allegations contained in [the employee's] EEOC charge." *Id. at 1280.*

> 5 The analysis that governs Title VII claims is the same analysis that governs FCRA claims. *See Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007);* [*11] *Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)* (stating that "[t]he Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII"); *The Florida State Univ. v. Sondel, 685 So.2d 923, 925 (Fla. 1st DCA 1996)* ("Federal case law interpreting Title VII . . . is applicable to cases arising under the Florida Act") (citation omitted); *Brand v. Florida Power Corp., 633 So.2d 504, 509 (Fla. 1st DCA 1994).* Furthermore, a similar exhaustion requirement applies to both Title VII and FCRA claims. *Prieto v. City of Miami Beach, 190 F.Supp.2d 1340, 1343 n. 2 (S.D.Fla. 2002).*

In Count I of their complaint plaintiffs complain of racial harassment, including being subjected to the use of racially offensive terms (for example, "DAN," which they describe as an acronym for "dumb ass nigger"; "niggers"; "black beetles"; and, in reference to African-American children, "nigglets"), threatening behavior (including the placement of nooses in the work areas of African-American firefighters and the wearing of sheets, KKK-style, by white firefighters), other [*12] reprimands, and fear that white firefighters could not be relied upon to protect African-American firefighters during a fire. The court readily concludes that plaintiffs' allegations are sufficient to state a claim because they implicate a workplace that is permeated with discriminatory intimidation, ridicule, and insult that would alter the conditions of employment and create an abusive working environment. *See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)* (citations omitted). As previously noted, however, only those judicial claims that "can reasonably be expected to grow out of the charge of discrimination," *Gregory, 355 F.3d at 1280,* will be considered adequately exhausted for purposes of Title VII.

Here, plaintiffs' allegations of racial slurs, threats, and other harassment that interfered with the performance of their duties do not reasonably grow out of the allegations of harassment contained in their EEOC charges, which were premised solely on the existence of tangible employment actions (*i.e.*, that white firefighters are given preferential treatment over black firefighters with respect to seniority and promotion issues). There are [*13] no allegations in plaintiffs' EEOC charges regarding the alleged racial slurs, threats, reprimands, fears, or any other pervasive or oppressive conditions that would reasonably have led the EEOC to investigate the workplace for a hostile work environment. The allegations in the third amended complaint do not clarify, amplify, or more clearly focus the allegations in the original EEOC charges but instead inappropriately assert new acts of discrimination. *See Gregory, 355 F.3d at 1279-80; see also Price v. M & H Valve Co., 177 Fed. Appx. 1, 14 (11th Cir. 2006)* (finding failure to exhaust administrative remedies for disparate impact claim where EEOC charge alleged only 1) denial of opportunity to apply for supervisory positions because positions were not advertised or white employees were promoted instead and 2) harassment through racial slurs, jokes, and differences in treatment); *Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 503 (7th Cir. 1994)* (stating that "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint [*14] can be reasonably inferred from the facts alleged in the charge"). The hostile work environment claims presented in plaintiffs' complaint could not have reasonably been expected to grow from the sketchy allegations plaintiffs made in their EEOC charges which do not, as required by EEOC regulations, contain a clear and concise statement of the facts - including dates, names, and other particulars - giving rise to the alleged unlawful employment practices. *See Alexander, 207 F.3d at 1332.* Thus the court finds plaintiffs have failed to exhaust administrative remedies for this claim, brought as Count I of the third amended complaint. [6] Because exhaustion is required prior to bringing suit, *see Chanda v. Engelhard/ICC, 234 F.3d 1219,1225 (11 th Cir. 2000)* (noting that "[t]he filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action"); *cf. Fouche v. Jekyll Island-State Park Authority, 713 F.2d 1518, 1524 (11 th Cir. 1983)* (stating that "all Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements"), dismissal without prejudice of Count I is warranted. [*15] Count III, plaintiffs' parallel claim under the FCRA, likewise is due to be dismissed.

6    The court notes plaintiffs' passing statements in Counts I and III that they have suffered the "denial of training opportunities." (Doc. 60, P P 29 and 72). To the extent that plaintiffs would argue that these brief and otherwise wholly unexplained references are sufficient to demonstrate that the claims presented in Counts I and III have been administratively exhausted, the court finds otherwise.

The City also seeks dismissal of Count V, plaintiffs' *§ 1983* claim alleging violation of the *equal protection clause of the U.S. Constitution*, for failure to exhaust administrative remedies. As plaintiffs were not required to exhaust administrative remedies before bringing a *§ 1983* claim, *see Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); Konikov v. Orange County, Fla., 410 F.3d 1317 (11th Cir. 2005)*, dismissal of Count V on this basis is not appropriate.

The Union contends that Counts IX and X have not been properly exhausted and therefore should be dismissed. [7] The court disagrees. The gist of these counts, as the court reads them, is that the Union has discriminated [*16] against plaintiffs based on their race with respect to promotion issues. In their EEOC charges plaintiffs alleged that the Union has given white firefighters more favorable representation than African-American firefighters, resulting in plaintiffs' loss of pay and promotions. Thus the judicial claims reasonably could be expected to grow out of the charges of discrimination previously filed. *Gregory, 355 F.3d at 1280*. Furthermore, insofar as the allegations involve discrete acts of discrimination, based on the face of the complaint and attachments it appears that the claims were timely brought. [8] *Ledbetter, 421 F.3d at 1178-79*.

7    Title *42 U.S.C. § 2000e-2(c)* addresses the liability of "labor organizations" and provides for union liability. *Section 2000e-2(c)* provides that "[i]t shall be an unlawful employment practice for a labor organization "to exclude or expel from its mem bership, or to otherwise discriminate against, any individual because of his race . . . ." *42 U.S.C. § 2000e-2(c)(1)*; to hinder an individual's employment opportunities, or adversely affect his status as an employee or applicant, because of his race.*§ 2000e-2(c)(2)*; or "cause or attempt to cause an employer to discriminate [*17] against an individual in violation of this section." *§ 2000e-2(c)(3)*.

8    Given the dates of the EEOC charges that plaintiffs Johnson, Cobbs, and Streeterfiled against the Union (*see* n. 1, *supra*), it appears that claims pertaining to events that occurred between approximately August 2003 and June 2004, as alleged in the instant complaint, were timely exhausted. *See National Railroad Passengers Corp. v. Morgan, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)* (stating that Title VII mandates that initial EEOC charge must be filed within 300 days of the occurring alleged unlawful employment practice in deferral states); *Greene v. Seminole Electric Cooperative, Inc., 701 So.2d 646, 648 (Fla. 5th DCA 1997)* (citing *St. Petersburg Motor Club v. Cook, 567 So.2d 488 (Fla. 2d DCA 1990))* (indicating that under the FCRA, there is a charge filing limitation of 365 days from the alleged violation); *Fla. Stat. § 760.11(1)*.

### Rule 12(b)(6) Motions

The City also moves for dismissal pursuant to *Rule 12(b)(6)*. Reiterating its contention that plaintiffs' allegations do not meet the pleading standards set forth in *Rules 8* and *10*, the City maintains that it is "virtually impossible to determine whether Plaintiffs have stated any claims [*18] for relief." (Doc. 62 at 10). In a very brief argument, the City complains that the counts do not identify which allegations are material to plaintiffs' asserted claims of discrimination and retaliation; the City further contends that plaintiffs have failed to present either direct or inferential allegations with respect to the material elements necessary to sustain recovery under some viable legal theory. (*Id.*). The Union argues more specifically in its motion for dismissal pursuant to *Rule 12(b)(6)*. It maintains that Counts IX and X, plaintiffs' Title VII and FCRA claims, fail to sufficiently allege that plaintiffs were qualified for, applied for, and were rejected for the promotions at issue and that other, less qualified employees who were not members of the protected class were promoted. The Union also argues that, with respect to Count XI, plaintiffs have failed to allege the actual loss of a contract interest, as required to state a claim pursuant to *§ 1981*. In their response, plaintiffs do not address any of defendants' *Rule 12(b)(6)* arguments.

In deciding a motion to dismiss for failure to state a claim under *Rule 12(b)(6)*, the court must accept the material allegations of [*19] the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes, 416 U.S. 232,94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L.Ed.2d 139 (1984)); Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)*. Motions pursuant to *Rule 12(b)(6)* test the facial sufficiency of the complaint and therefore should be analyzed in conjunction with the legal standard set forth in *Rule 8*. To satisfy the pleading requirements of

Rule 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510-12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).* The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *See Swierkiewicz, 534 U.S. at 511* (quoting *Scheuer, 416 U.S. at 236*); *United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003).*

Until the recent Supreme Court decision in *Bell Atlantic Corp. v. Twombly, 550  U.S.   , 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007),* [*20] courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley, 355 U.S. at 45-46.* Rejecting a literal reading of the "no set of facts" rule, the Court held in *Twombly* that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ."; in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly, 127 S.Ct. at 1964-65.* The Court further instructed that the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id. at 1969.*

As noted, the City makes only a general argument for dismissal of Counts II and IV through VII pursuant to *Rule 12(b)(6),* neither identifying nor discussing the applicable [*21] law and facts or the particular defects in the individual counts. [9] Notwithstanding the City's lack of specificity (and plaintiffs' failure to respond at all to the City's arguments), based upon its own cursory review of these counts the court concludes that they provide reasonably fair notice of what the plaintiffs' claims are and the grounds upon which they rest, and that plaintiffs are entitled to offer evidence to support the claims. *See Swierkiewicz, 534 U.S. at 511-12.* Plaintiffs' claims need only include "enough facts to state a claim to relief that is plausible on its face," *Twombly, 127 S.Ct. at 1964-65,* and the court concludes they have done so. The City's motion to dismiss pursuant to *Rule 12(b)(6)* is therefore denied.

9  The City does not move for dismissal of Count VIII.

Next, the court addresses the Union's motion to dismiss Counts IX and X, the claims of promotion discrimination pursuant to Title VII and the FCRA brought by plaintiffs Cobbs, Streeter, and Johnson, and Count XI, plaintiffs' *§ 1981* claim, which is based on essentially identical factual allegations.

In the third amended complaint plaintiffs allege that in the Fall of 2003, the Union "tipped off the White Firefighters [*22] that there would be six (6) openings for new Captain's positions when there was only one (1) vacancy was officially announced coming open [sic]." (Doc. 60 at 24). Plaintiffs were also told that they could not take the necessary prerequisite training courses until the vacancy was formally announced. Because they were aware of the availability of only one position, plaintiffs decided not to take the captains' test. An unusually high number of white firefighters, however, took the test because of their inside information from the Union about the additional, unannounced positions. The Union's providing information to white firefighters that it did not give to African-American firefighters reduced the "promotional opportunities of African American Firefighters who had already been disheartened to take promotional tests due to the City's providing White Firefighters the answers and African American Firefighters being skipped over for promotion even thought their test scores were higher than the White Firefighters." (*Id.* at 26). In the Spring of 2004, the Union agreed to the City's request to extend the captains' promotion list for one year, thus permitting the white firefighters on the list [*23] to move into the new positions without their having to retake the test. At the same time, however, the Union agreed to extend the lieutenants' promotion list - which then included two African-American firefighters - for only six months, which resulted the African-American firefighters' having to retake the promotions test. The African-American firefighters thus were forced to compete with white firefighters who had the advantage of knowing that six positions would be available due to the vacancies created by the promotions to captain. The Union also agreed that firefighters on the existing lieutenants' list need not be immediately promoted even though promotions were immediately made from the captains' list, which had the effect of delaying Streeter and Cobbs "from having the opportunity to be promoted to for [sic] the Lieutenant's positions." (*Id.* at 26).

The court concludes that Counts IX and X are insufficient to withstand the Union's motion to dismiss. To make out a prima facie case of promotion discrimination a plaintiff must show that (1) he is a member of a group protected by Title VII; (2) he applied for and was qualified for the position in question; (3) he was not given the [*24] promotion; and (4) someone outside the protected group was given the promotion or the position was left

open. [10] *See Walker, 158 F.3d at 1186* (discussing the *McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)*, framework for establishing prima facie case for Title VII claim of employment discrimination). By alleging that they are African-Americans, plaintiffs have adequately pled the first element of the prima facie standard. With regard to second element of the standard and the lieutenant positions, Counts IX and X contain the allegation that Cobbs and Streeter were already on the promotion list for the lieutenant positions in question and thus were qualified for those jobs. Cobbs and Streeter therefore have adequately alleged this element of the standard. As to Johnson, however, although in Counts II and IV (both of which are claims against the City, not the Union) plaintiffs allege that Johnson was scheduled to take a test for a promotion to lieutenant, they do not allege that he in fact ever took the test or became qualified to be promoted to lieutenant. Thus Johnson's allegations do not satisfy the standard's second requirement. The third element [*25] of the standard requires an allegation that plaintiffs were denied the promotions at issue, but Cobbs and Streeter do not allege that they were not promoted to lieutenant. Rather, Cobbs and Streeter appear to allege only that their promotions were, for some unspecified period, in some way delayed. Finally, although required under the fourth element of the standard, Cobbs and Streeter do not allege that firefighters from outside their protected class were promoted in their stead. Thus neither Cobbs, Streeter, nor Johnson has alleged a prima facie case of discrimination regarding his promotion to lieutenant. With respect to the captains' positions, as plaintiffs state that they elected not to take the Fall 2003 captains' test, they have not alleged that they were qualified or applied for the positions in question, as required under the second element of the standard. Accordingly, none of the plaintiffs has alleged a prima facie case of promotion discrimination with respect to the captains' positions.

10   Contrary to the Union's position, the court finds that a prima facie case in failure to promote cases does not include as part of the fourth prong the requirement that the plaintiff show [*26] that the individual who received the promotion was equally or less qualified than the plaintiff. It is true that numerous Eleventh Circuit panels have followed *Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 n. 7 (11th Cir. 1983)*, which indicated in dicta that the prima facie standard included the "equally or less qualified" proviso. *See, e.g., Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004); Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001); Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000)*. This court agrees with the con-

clusion in *Walker v. Mortham, 158 F.3d 1177(11th Cir .1998)*, however, that the "earliest case" rule requires it to follow the former Fifth Circuit's decision in *Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir.1980)*, which does not require a plaintiff to prove relative qualifications to establish a failure to promote prima facie case. *Walker, 158 F.3d at 1193. See also Springer v. Convergys Customer Management Group Inc., - F.3d - -, 2007 U.S. App. LEXIS 28913, 2007 WL 4357395 (11th Cir. 2007)* (listing elements of prima facie case and not including "equally or less qualified" requirement); *Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 768 (11th Cir. 2005)* [*27] (same); *Harrington v. Disney Regional Entertainment, Inc., 2007 U.S. App. LEXIS 24713, 2007 WL 3036873 (11th Cir. 2007)*(citing *Walker* for standard and its reliance on *Crawford*).

Plaintiffs are not, of course, required to allege a prima facie case of racial discrimination in order for their claims to survive dismissal pursuant to *Rule 12(b)(6)*. *Swierkiewicz, 534 U.S. at 510-12* (reasoning that in employment discrimination cases prima facie case under *McDonnell-Douglas* is an evidentiary standard rather than pleading standard and holding that plaintiff need not plead a prima facie case of discrimination to avoid *Rule 12(b)(6)* dismissal, provided his complaint gives fair notice of his claims and relief is available under some set of facts consistent with the allegations). Plaintiffs' allegations would be sufficient if, despite failing to allege a prima facie case, the complaint gave fair notice of their claims and provided adequate factual allegations to raise a right to relief above the level of the hypothetical or incredible. Here, however, the court concludes that the allegations do not do so. Even accepting that the sketchy and disjointed allegations contained in Counts IX and X are sufficient to show plaintiffs' [*28] intention to pursue a cause of action for promotion discrimination on the basis of race and thus provide fair notice of their claims, the allegations nevertheless are not "enough to raise a right to relief above the speculative level . . ." and do not include "enough facts to state a claim to relief that is plausible on its face." *Twombly, 127 S.Ct. at 1964-65*. In short, even if true, plaintiffs' allegations, including that the Union's "tipp[ed] off" only white firefighters of the existence of five additional job openings for captain and agreed to extend the lieutenants' promotion list for only six months (as opposed to one year for the captains' list), are far too speculative and implicate a causative relationship far too attenuated and implausible to state a claim of promotion discrimination based on plaintiffs' race. For these reasons, the court concludes that none of the plaintiffs has stated a viable claim of promotion discrimination against the Union in Count IX, plaintiffs' Title VII

claim, or Count X, their similar claim under the FCRA. The Union's motion to dismiss these claims therefore shall be granted.

The court further concludes that dismissal of Counts IX and X should [*29] be with prejudice. It is true that leave to amend should be freely given when justice so requires, *Fed.R.Civ.P. 15(a)*, but the court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).* In this case, although plaintiffs have filed one amended complaint as of right and have twice amended their complaints by filing a more definite statement, they have failed to cure the deficiencies identified above. [11] Moreover, because plaintiffs have not sought leave to amend their complaint (and consequently also have not provided the court with any proposed amended claims to review), the court concludes that no basis exists for permitting plaintiffs to amend these claims yet again. *See Wagner, 314 F.3d at 542* (holding that the district court was not required to sua sponte grant a counseled party leave to amend his complaint when no motion to amend was filed).

> [11] Plaintiffs should have been apprised of the defects [*30] in their instant complaint because the Union presented the identical *Rule 12(b)(6)* arguments in its prior motions as it does here, even though the court did not previously address them. (*See* docs. 32, 54).

Finally, the court considers Count XI, plaintiffs' *§ 1981* claim against the Union. This count recites many of the same allegations that are contained in Counts IX and X. *Inter alia*, plaintiffs additionally allege that "all such discriminatory conduct on the part of the Defendant, adversely affected Plaintiffs employment contract and terms and conditions of employment . . . ." (Doc. 60 at 33).

The Eleventh Circuit has instructed that in order to state a claim of race discrimination under *§ 1981* a plaintiff must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *See Jackson v. Bellsouth Telecommunications, 372 F.3d 1250, 1270 (11th Cir. 2004),* citing *Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000).* Among other enumerated activities, "*[s]ection 1981* prohibits [*31] intentional race discrimination in the making and enforcement of public and private contracts, including employment

contracts." [12] *Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999); see also Saint Francis College v. Al-Khazraji, 481 U.S. 604, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987)* (noting *§ 1981* has been construed to forbid all racial discrimination in the making of contracts). The Supreme Court has held that a labor union may be subject to liability under *§ 1981* for racial discrimination if its conduct impairs an employee's ability to enforce his established contract rights through legal process. *See Patterson v. McLean Credit Union, 491 U.S. 164, 177-78, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)* (stating that "certain private entities such as labor unions, which bear explicit responsibilities to process grievances, press claims, and represent member in disputes over the terms of binding obligations that run from the employer to the employee, are subject to liability under *§ 1981* for racial discrimination in the enforcement of labor contracts."). *See also Goodman v. Lukens Steel Co., 482 U.S. 656, 669, 107S, 107 S. Ct. 2617, 96 L. Ed. 2d 572.Ct. 2617, 96L.Ed.2d572(1987).*

> [12] *Section 1981* in part provides [*32] "[a]ll persons . . . shall have the right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." *42 U.S.C. § 1981(a). See also Patterson v. McLean Credit Union, 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)* (reading then-applicable version of *§ 1981* to "prohibit[ ] racial discrimination in the making and enforcement of private contracts" but not to"conduct which occurred after the formation of a contract and which does not interfere with the right to enforce established contract obligations."), *superseded by statute,* as stated in *Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372-73, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)* (noting that 1991 Act overturned *Patterson's* holding that racial harassment relating to employment conditions was not actionable under *§ 1981* and that Act redefined *§ 1981's* key "make and enforce contracts" language to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

As previously noted, plaintiffs have [*33] adequately alleged that they are members of a racial minority. Although plaintiffs assert the Union intended to discriminate against them on the basis of race, it is doubtful that plaintiffs have set forth facts of more than a conclusory nature that support such an inference. "[W]holly conclusory allegations" lacking sufficient factual support do not "meet even the liberal standard of notice pleading." *Wagner v. Daewoo Heavy Industries America*

*Corp., 289 F.3d 1268,1273 (11 th Cir.), rev'd on other grounds, 314 F.3d 541 (11th Cir. 2002) (en banc)* (observing in employment action pursuant to § 1985 that "[p]leadings must be something more than an ingenious academic exercise in the conceivable") (quotation omitted); but *see Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn Univ., 267 F.Supp.2d 1139, 1145 (M.D.Ala. 2003)* (explaining that at the motion to dismiss stage of litigation, "[p]laintiff cannot be expected to do more than allege racial motivation or bias" because "factual information relating to motive and purpose is peculiarly in the hands (and minds) of the Defendants").

Even assuming that plaintiffs have adequately alleged intentional discrimination on the basis [*34] of race, however, the court concludes that allegations that this discrimination involved an activity enumerated in the statute, *i.e.*, the right to enforce plaintiffs' employment contract with the City [13] - are insufficient as presently pleaded. In *Patterson*, the Supreme Court held that promotion discrimination claims are actionable under § 1981, as it existed prior to being amended in 1991, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson, 491 U.S. at 185.* Consequently, "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable. . .." *Id.* In the instant case, in order to state a claim plaintiffs must allege that the Union's discriminatory actions prevented them from entering into a new contractual relationship with the City. Plaintiffs have not, however, identified the terms of their employment contract with the City or the nature of their promotion opportunities pursuant to that contract, although presumably the rank advancements involved increases in salary, duties, and responsibilities. [*35] If plaintiffs' factual allegations reflected that the promotions in fact implicated an entirely *new* contractual relationship, the allegations might state a claim for relief under § 1981. If plaintiffs' factual allegations indicated that the promotions were simply a term or condition of their continued employment under the *existing* contract, however, the allegations would not. As pleaded, Count XI contains insufficient factual detail showing that the Union's actions impaired plaintiffs' ability to enter into a new and discrete contractual relationship with the City. Because Count XI thus fails to state a claim, the Union's motion to dismiss shall be granted. [14] Given the possibility that plaintiffs might be able to state a viable claim through repleading, however, dismissal will be without prejudice and plaintiffs will be given the opportunity to file an amended complaint that addresses the above-described deficiencies in Count XI.

13   The Union's argument to the contrary notwithstanding, the court finds that plaintiffs' reference to their "employment contract" is sufficient to allege that they have a contractual relationship with the City.

14   In support of its argument that plaintiffs have [*36] failed to allege the loss of a contractual interest and that such failure is fatal to their § 1981 claim, the Union cites *Morris v. Office Max, Inc., 89 F.3d 411, 414-15 (7th Cir. 1996)* (stating that a customer's "claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities").

*Morris* arose in the retail or consumer context, which is true of the other cases requiring the loss of a contractual interest in order to make out a § 1981 claim that the court was able to locate. *See, e.g., Kinnon v. Arcoub, Gopman & Associates, Inc., 490 F.3d 886(11th Cir. 2007)* (holding that in the retail context plaintiff must demonstrate the loss of an actual contract interest to establish a claim under § 1981); *Arguello v. Conoco, Inc., 330 F.3d 355 (5th Cir. 2003)* (finding that customer who had successfully completed her transaction and was not actually denied the ability to engage in any contractual activity could not establish a § 1981 claim); *Hampton v. Dillard Dep't. Stores, Inc., 247 F.3d 1091, 1101 (10th Cir. 2001)* (requiring interference with contract beyond the mere expectation [*37] of being treated without discrimination while shopping). The Union neither cites cases in the employment setting that require the loss of a contractual interest nor explains the possible applicability of *Morris* or other similar consumer cases to employment cases.

Accordingly, it is ORDERED:

1. The motion to dismiss filed by the City of Pensacola (doc. 62) is GRANTED, to the extent Counts I and III are dismissed without prejudice. The motion is DENIED in all other respects.

2. The motion to dismiss filed by the Pensacola Professional Firefighters Local Chapter 707 (doc. 61) is GRANTED. Counts IX and X are dismissed with prejudice. Count XI is dismissed without prejudice.

3. Plaintiffs shall have ten (10) days from the date of this order in which to file a fourth amended complaint that includes only those claims that the court has indicated may proceed and addresses the above-described deficiencies in Count XI.

2007 U.S. Dist. LEXIS 92603, *

4. The defendants' alternative motions for more definite statement are DENIED.

5. All requests by the parties for costs incurred in connection with filing their motions and/or response are DENIED.

DONE and ORDERED this 18th day of December, 2007.

s/ M. Casey Rodgers

**M. CASEY RODGERS**

**UNITED [*38] STATES DISTRICT JUDGE**